## MARY O'HERRIN v. REUBEN BROOKS.

1. DEED. *Description. Notice. Call for a monument.*
   Where the owner of a block has subdivided it into lots which are conveyed to successive purchasers, a description by courses and distances in the lot last sold will not be controlled or affected by a call for a monument in one of the prior unrecorded deeds, of which the purchaser under the last deed has no notice at the time of his purchase.

2. SAME. *Mistaken call for a monument.*
   While a call for a monument will prevail over courses and distances in case of discrepancies in deeds, this rule will not apply where the call for a monument is inserted in the deed by mistake.

3. SAME. *Description by name or number. Effect on courses and distances.*
   A description of a lot by its known name or number on a designated plat or map will ordinarily prevail over courses and distances, or calls for a street or other monument.

FROM the circuit court of Warren county.

HON. RALPH NORTH, Judge.

The appellant, Mary O'Herrin, brought this ejectment suit against appellee, Reuben Brooks, to recover a certain lot situated in that part of the city of Vicksburg known as "Pinckardia," and described as follows:—

" That part of lot (4) four, of a survey made by Brown & John-son, of a part of square 6, Pinckardia, called ' little Veranda,' and more particularly described as follows : Beginning at the south-west corner of the square, being the southwest corner of lot 4, ' little Veranda' survey, thence north, along Walnut street, 59.5 feet; thence east 153.1 feet; thence south 63.2 feet; thence west 161 feet, to the place of beginning."

The lot is a part of the lands of one Pinckard, who as early as 1836 was the owner of a large tract in the said city, and who, during that year, caused it to be surveyed and platted. The title to one subdivision, known as square 6, Pinckardia, became vested in 1854, in Brown & Johnson. This square was bounded on the west by Walnut street, and was divided into lots, five of which fronted on Walnut street. These were numbered from 40 to 44 inclusive, the lot number 40 being the southernmost one.

Both plaintiff and defendant claim title from Pinckard, the common source, and also through Brown & Johnson. After the making of the plat, and before it was recorded, Pinckard sold a part of the tract by metes and bounds to Robbins and Davenport, and Robbins acquired the interest of Davenport at sheriff's sale in 1840. This tract, including 16.82 acres, has been since known as the " castle property."

The north line of the " castle property," by actual measurement according to the metes and bounds given in the deed, was the south line of square 6, and also coincided with the north line of south Madison street. In 1848, Winn's map of Vicksburg was adopted as the official map of the city, and was the only map of Vicksburg until 1870. On this map the " castle property" of Robbins is laid down as separated from square 6, Pinckardia, by South Madison street.

Soon after their purchase of square 6, Brown & Johnson built thereon four cottages, which from their peculiar shape were known as " little Verandas." These four houses were built on lots 41, 42, and 43, leaving lot 40 vacant. This lot 40 was unenclosed and unsurveyed, with no defined lines, and no street actually marked off or in use adjoining it.

In 1862, Brown & Johnson being desirous of selling these four houses, divided the three lots on which they were built into four, each fronting 52 feet and 9 inches on Walnut street, and numbering them one to four consecutively, lot number 4 being the southernmost one, and immediately north of lot 40 of the original survey. During the same year, and about the same time, they sold the four lots and houses, the first one sold being lot number 2 to one McCabe. Lot number 1 was sold to Elliott, and lot number 3 to Mullen. In each of these three conveyances the lots are given a frontage of 52 feet and 9 inches on Walnut street. Brown & Johnson, without having made any actual survey of the lots in square 6, made a plat of them and attached it to the deed of McCabe. This was not put upon record until some time after the deeds had been executed to purchasers of the other three lots and houses. On this plat these four lots are called the "little Veranda" block. On this plan neither lot number 40, on which no house was built, nor South Madison street is indicated; but the "castle property" of Robbins is made to appear as being immediately south of lot number 40. The last of the lots to be sold was lot number 4, which was sold to appellant, Mrs. O'Herrin. This lot is described in her deed as follows:—

"Lot 4, 'little Veranda,' commencing at the corner of no. 3, sold to Alex. Mullen on Walnut street, and running along Walnut street, south about 56 feet, or to the full extent of said lot, be the measurement more or less, and then eastward the full depth of said lots; it being distinctly agreed that we sell the whole of said block on the south end, after taking off what had been sold to J. Elliott, no. 1, M. McCabe, no. 2, and A. Mullen, no. 3."

In the deeds to these four lots the words "about," or "more or less," are used in connection with the distances on Walnut street. The four purchasers took possession of their respective houses on the lots sold to them, and have since occupied them, with fronts shown on the plat, and fences were built around each lot. No further conveyance was ever made by Brown & Johnson of any property in said square, and they have paid no taxes on any property therein since making these several conveyances.

The defendant, Brooks, is in possession of the lot sued for, and claims the same by virtue of a quit claim deed from the executor of Johnson, and also a quit claim from the heir of Brown. Both deeds having been executed in May, 1887, and duly recorded. In each of these deeds the land is described as "lot 40, square 6, Pinckardia."

The contention on the part of plaintiff is that, inasmuch as lot no. 40 is south of the lots conveyed to Elliott, Mullen and McCabe, and between them and the castle property of Robbins, she, appellant, is the owner thereof by virtue (1) of her deed from Brown & Johnson, which, in describing the lots conveyed to her, recites as follows: "It being distinctly agreed that we sell the whole of said block on the south end after taking off what has been sold to Elliott, no. 1, McCabe, no. 2, and Mullen, no. 3;" and (2) by virtue of the plat attached to McCabe's deed, which without indicating South Madison street, places appellant's lot immediately north of the adjoining "castle property" of Robbins.

The case was tried by the court, by consent, without a jury, upon an agreement as to the facts. Judgment was rendered for the defendant, and plaintiff appeals.

*Miller, Smith & Hirsh*, for appellant.

1. Brown & Johnson attempted to fix and locate with absolute certainty on the plat the exact boundaries of the property they had designated as "little Veranda block." It is undeniable that the boundaries of the block are in all respects correctly stated and indicated, and the southern boundary of square 6 is the "castle property" of Robbins. There is no dispute as to the fact that the northern boundary of castle property is the southern boundary of square 6, and the north line of South Madison street, but within these limits is found the exact amount of land sold to Robbins by Pinckard. Brown & Johnson were careful to designate plainly the southern boundary of their land employing not only the name of the owner "Robbins," but the term by which his property was generally known, *i. e.*, castle property. This exceptional precaution in the location of the southern line lends emphasis to the pre-

sumption that it was their intention·to fix this line beyond doubt. There is nothing in either the plat or the deeds to show that any attention was paid to South Madison street. In fact it is not controverted that there was no street ever worked or used or surveyed, the lot in controversy being a hollow with no level land on it. So that the question whether there was a street or not is of no consequence.

As the plat does not accurately indicate either the shape or dimensions of the property, and as the boundaries are actually given, the lot will be located by the controlling consideration of its boundaries or monuments.

The fact that Brown & Johnson ceased, after selling the lots in 1862, to pay taxes on any of the land is persuasive that they intended to convey all the property belonging to them in square 6.

2. It is evident that Brown & Johnson intended the boundaries to control, (1) because the land was extremely hilly and broken and the dimensions and shape were not known, or were of little consequence; (2) they did not undertake to fix with accuracy the width or frontage of the lots sold, but used in all of them the words " about" and " more or less." But in the deed to appellant they use the significant words, " it being distinctly understood that we sell the whole of said block on the south end, after taking off what has been sold to Elliott, McCabe and Mullen." It is difficult to establish by the use of language a clearer intention to avoid uncertainty.

3. Monuments will control courses and distances, and in cases of discrepancies in description courses and distances must yield to boundaries. This is the rule of law prevailing in all the states. *Frederick* v. *Youngblood,* 19 Ala. 680; *Doe ex dem. Phillips' Heirs* v. *Porter,* 3 Ark. 18; *Johnson* v. *Moor,* 2 Root. 252; *Dale* v. *Smith,* 1 Del. (Chy.) 1; *Lyman* v. *Gedney,* 114 Ill. 388; *Mc-Cown* v. *Delany,* 3 Bibb, 46; *Pierce* v. *Faunce,* 37 Me. 63; *Jones* v. *Plater,* 2 Gill, 125; *Powell* v. *Clark,* 55 Mass. 355; *Newman* v. *Foster,* 3 How. 383; *Rutherford* v. *Tracy,* 48 Mo. 325; *Faure* v. *Martin,* 3 Seldon, 210; *Shultz* v. *Young,* 3 Ired. (Law) 385; *Peay*

v. *Fleming,* 2 Hill (Chy.) 98 ; *Bullard* v. *Copps,* 2 Humph. 409 ; *Pendleton* v. *Stewart,* 5 Call, 1 ; *Ayres* v. *Watson,* 113 U. S. 594.

*Birchett & Gilland* and *R. V. Booth,* for appellee.

We have no fault to find with the principles of law announced in the cases cited by appellant, although very few of them have any applicability to the matter at bar.

*Rutherford* v. *Tracy,* 48 Mo. 325, cited by appellant, is properly in point. "In a deed of land, the description by lot should prevail over that by bearings and distances. Where the language convey- ing premises was 'Lot No. 3, in Block 87, in the old town of Hudson, now Macon, beginning at the northeast corner, etc.,' the description actually embracing a less area than lot 3 ; held that all of lot 3 was conveyed." We do not dispute these principles, but we invoke them.

A lot of a designated number in a city or plan or plat is a monu- ment, and will control courses and distances. *Rutherford* v. *Tracy, supra; Lincoln* v. *Wilder,* 29 Maine, 169; *Sayers* v. *City of Lyons,* 10 Iowa, 249. And a description by the number of the lot will control a reference to adjacent streets, and correct a mistake in the courses and distances bounding the lot. *Nash* v. *Wilmington, etc., R. R. Co.,* 67 N. C. 413 ; *Jackson* v. *Marsh,* 6 Cowen, 281.

Applying the above cases, and those from Maine and Maryland and some other states cited by appellant, to appellant's deed from Brown & Johnson, we find that they conveyed to her a lot of land by a mentioned plat, on which the lot was accurately described by metes and bounds, as to its frontage and width.

She got lot 4 of that plat, and, to make more certain what was conveyed, the deed gives its metes and bounds : "Commencing at the corner of No. 3, sold to Alex. Mullen, and running south along Water street about 56 feet, or to the full extent of said lot, *be the measurement more or less.*" "More or less" is a two-edged sword, which cuts both ways. According to the plat, which was not be- fore the parties when they were making the deed, the measurement is *less,* to wit, 52 feet 9 inches, and that is all that appellant took by her deed.

Even if the "castle property" was a monument (which it was and is not), the mistake of the scrivener who drew this plat will not operate to convey to appellant two and a half times as much land as she purchased. For where there is a discrepancy between two descriptions, the one will be adopted as to which there is the least liability of mistake. *Miller* v. *Cherry*, 3 Jones Eq. 29. A description which is sufficient to identify the premises, and accords with the obvious intention of the parties, will not be vitiated by the insertion of erroneous calls for monuments or other particulars which are repugnant to that description; but such erroneous or mistaken particulars will be rejected as "false demonstrations," and the land as described by the remaining consistent particulars, will pass by the deed. *Rogers* v. *Peebles*, 72 Ala. 529; *Wright* v. *Wright*, 34 Ib. 194; *Andrews* v. *Murphy*, 12 Ga. 431; *Kruse* v. *Wilson*, 79 Ill. 233; *Beal* v. *Gordon*, 55 Maine, 482; *Doane* v. *Wilcutt*, 16 Gray, 368; *Cooley* v. *Warren*, 53 Mo. 166; *Morse* v. *Rogers*, 118 Mass. 573, 578; 3 Washb. on Real Prop., 430, 431; Tiedeman on Real Prop., § 829 and cases cited.

There is no magic in a monument which will give it invariable control. It controls only because it is regarded as more certain than a given distance. If it should, in a given case, be less certain, the rule would fail with the reason for it, and the monument would yield to the distance, and an artificial monument will yield more readily than a natural one. *Higinbotham* v. *Stoddard*, 72 N. Y. 94; *Davis* v. *Rainsford*, 17 Mass. 207.

WOODS, C. J., delivered the opinion of the court.

The contention in this case is as to that part of Block 6, Pinckardia, originally owned by Brown & Johnson, and not embraced within the "little Veranda Block," on which defendant resides, and to which he claims to hold title under a conveyance, made in 1887, by the heirs and legal representatives of Brown & Johnson, to lot 40, Pinckardia.

On the face of the deed to lot 4, little Veranda Block, made by Brown & Johnson to the appellant, there would seem to be no ground upon which to base appellant's claim, now asserted to lot

40, block 6, Pinckardia survey. On the agreed statement of facts submitted in the record, there appears equally little ground on which to base this assertion of title to lot 40—except in one particular, which will be noticed later. The language of appellant's deed, hereinbefore quoted, contains no intimation of a purpose to convey any part of lot 40, block 6, Pinckardia survey, except so far as lot 4, little Veranda block, might overlap the northern edge of said lot 40. The deed describes the property conveyed to appellant as lot 4, little Veranda; it further describes it as beginning at the corner of lot 3, already sold Mullen, on Walnut street, and running along said street about 56 feet, or to the full extent of said lot (lot 4, little Veranda), and concludes by declaring that the conveyance is intended to cover the whole of said block on the south end, after taking off what had been previously sold. What block is referred to in this concluding sentence? What block was in the minds of the parties? What block had been created and subdivided into lots 1, 2, 3, and 4—the latter of which appellant was then having conveyed to her? Evidently the little Veranda block. Indeed, this is so plain that we do not understand counsel for appellant to deny it. The appellant then acquired title to lot 4, little Veranda survey; and if, after taking off the three lots in that block already sold, there should be found to be more than 56 feet front to lot 4 on Walnut street, then this excess was to pass to appellant also.

It is insisted, however, that appellant is entitled to recover, because, as counsel contend, there is a call for a well-known monument on the south side of the property, and that monuments must prevail over courses and distances when there is a discrepancy in courses and distances in descriptions or boundaries.

To this it is to be said that there is no call for any monument in the deed of Brown & Johnson to appellant. There is on the plat attached to McCabe's deed to lot no. 2 from Brown & Johnson (but which is not referred to in appellant's deed) an apparent call for the monument known as Castle property. Whatever effect this might have on McCabe's, it cannot have any in considering appellant's deed to her purchase, because appellant acquired title

to lot 4 in 1862, and McCabe's deed, or plat, containing the call for Castle property, was not put to record until 1863, and there is no hint of appellant's ever having seen or heard of this plat when she accepted her deed with its metes and boundaries of lot 4. Nothing is found in the record indicating that appellant had any knowledge of the call for the Castle propery monument on the plat attached to McCabe's deed when she purchased and took her conveyance to lot no. 4.

Moreover, while it is true that a call for natural or artificial monuments will prevail over courses and distances, in discrepancies in deeds, yet it must not be forgotten that where there is a mistaken call for a monument the rule does not apply. If the reference on McCabe's plat is thought to be such call for monument, it is quite clear that it is an erroneous call, for South Madison street, as laid down on Pinckard's survey, and on Winn's official map of the city of Vicksburg, lies directly between the "little Veranda" block and the "castle property" monument. Shall this call for a monument be held to literally prevail and embrace South Madison street, or shall it be held a mistaken call for a monument? Manifestly the latter. *Falsa demonstratio non nocet.* 16 Gray, 371; 6 Cowen, 283; 29 Me. 182; 118 Mass. 578.

But, further, where lands are platted or mapped and generally known by certain names, or numbers of such plat or map, and a sale is made of some certain lot by name or number, and a discrepancy is found in the conveyance between the call for the certain named or numbered lot and other calls, as for streets or other monuments, what rule shall we apply? Which call shall prevail? The call for the lot itself must prevail over any description by courses or distances, or the descriptive particulars, and over other calls for monuments, ordinarily, for the reason that the lot itself, with the name or number by which it is known, is the prominent object, and therfore there is less likelihood of uncertainty in regard to it than in regard to other descriptions, or calls for monuments, which are only employed to identify more particularly the principal object. *Nash* v. *Wilmington, etc., R. R. Co.,* 57 N. C. 416; *Rutherford* v. *Tracey,* 48 Mo. 326; *Sayers* v. *City of Lyons,* 10 Iowa, 254.

Tested by these rules the judgment of the court below is free from error, and it is therefore,

*Affirmed.*

*Miller, Smith & Hirsh,* for appellant, filed a suggestion of error and a brief in support thereof, but the court refused to modify its opinion.