401 So.2d 716 (1981)
BILOXI DEVELOPMENT COMMISSION  Urban Renewal Agency of the City of Biloxi, Mississippi, Successor to the City of Biloxi Housing Authority
v.
Abe FREY, et al.
No. 52693.
Supreme Court of Mississippi.
July 15, 1981.
Rehearing Denied August 12, 1981.
Grier J. Gregory, W. Raymond Hunter, Bryant & Stennis, Gulfport, for appellant.
Charliene Roemer, Thomas L. Wallace, Sekul, Hornsby, Wallace & Teel, Biloxi, for appellees.
Before PATTERSON, C.J., and LEE and HAWKINS, JJ.
*717 PATTERSON, Chief Justice, for the Court:
This appeal emanates from a confirmation of title suit brought by the Biloxi Development Commission (hereinafter City) and a cross-bill to confirm title by Abe, Morris, and Rose Spector Frey (hereinafter Freys) in the Second Judicial District of Harrison County Chancery Court. The property, or a part of it, in dispute, was condemned in a prior suit brought in the Special Court of Eminent Domain of the County Court of Harrison County. To understand the posture of this case, it is necessary to review its prior litigation.
The City filed a petition for condemnation of certain property owned by the Freys on November 1, 1971. The property was described as:
That certain lot or parcel of land bounded on the North by Jackson Street, on the East by property now or formerly of Atkinson; on the South by property now or formerly of Patton; and on the West by Couevas Street, having a frontage on Couevas Street of 47'8" and running back East between parallel lines 108 1/2' more or less, said lot or parcel of land within all improvements thereon and lying and being located in and a part of the Private Claim of Angelique Fasier, designated on the U.S. Government Township Plat as Section or Claim Number 27, Township 7 South, Range 9 West in Harrison County, Mississippi, and being the same property acquired by Mrs. Stella Joachim by Deed dated January 21, 1946, and recorded in Book 282, pages 26-27 of the Records of Deeds of Harrison County, Mississippi.
SUBJECT HOWEVER, to the East 12 feet of the above described property heretofore conveyed to the United Gas Corporation by Deed dated September 16, 1965, as the same is recorded in Book 560 at Page 319 of the Land Deed Records of Harrison County, Mississippi.
LESS HOWEVER, approximately the North 6 and 6/10 feet used of said property for the widening of Jackson Street hereby retained by the City of Biloxi for Jackson Street.
Being Parcel No. 33-6 and apparently owned by ABE FREY and MORRIS FREY.
The controversy arises because there are two lots in Parcel 33-6 and only one is described in some detail. A lot, probably the northern one, with a frontage of 47.8 feet on Couevas Street is described in some particularity; but the remaining lot in Parcel 33-6 is not described in metes and bounds.
The Freys were paid $22,500.00 for their land which was taken in the eminent domain proceeding. The judgment of March 20, 1972, did not contain a detailed description of the 71 foot lot, which is now in dispute, although Parcel 33-6, composed of the 47.8 foot lot and the 71 foot lot, was used in the description.
Subsequently, on November 7, 1973, the Freys brought suit against the City to cancel a cloud and confirm title in them to the 71 foot lot. A demurrer was sustained to this bill because of no equity and no deraignment of title. The chancellor also abated any conveyance of the 71 foot lot and granted leave to amend. The Freys did not amend their bill of complaint and the cause was thereafter dismissed by the court.
This brings us to the present confirmation suit by the City to quiet title to the 71 foot lot which it alleges it owns via the eminent domain proceeding. The Freys answered, denying the title of the City and seeking confirmation of title in Rose Spector Frey, the wife of Abe. The City thereupon moved to dismiss the Freys' claim because of res judicata, estoppel, accord and satisfaction, or in the alternative, a motion to strike the Freys' affirmative defenses.
The trial court determined it could not alter the judgment of the eminent domain court. In considering that judgment, the chancellor ruled it contained two incompatible descriptions and the more specific description controlled; therefore, confirmation of title in the City was denied.
It also ruled the Freys' previous cloud suit was not res judicata to their cross-bill to confirm title because there was no identity *718 of the cause of action or the thing sued for. Further, the cross-bill failed to show the Freys were in possession of the land or there was no adverse occupancy; and therefore, it was dismissed with prejudice with costs assessed against the City. The final decree leaves the title to the litigated property undecided and in dispute.
The City appeals, assigning three errors:
1. The chancellor was manifestly wrong in overruling appellant's Motion to Dismiss in the Nature of a Plea in Bar.
2. The chancellor erred as a matter of law in failing to confirm title to the disputed property in the City as the property sought to be confirmed is a portion of the same property that was taken in a prior eminent domain proceeding.
3. The chancellor erred as a matter of law in that the effect of the final decree holds title to the disputed property in abeyance.
The Freys cross-appeal assigning as error that the trial court erred in failing to make a positive determination as to the ownership of the property.
We are of the opinion the trial court erred in not finding the Freys equitably estopped to deny the City's title. The record of the eminent domain proceeding leads us to this conclusion. John M. Smallwood, Sr., an appraiser, testified concerning block 33, parcel 6 in the condemnation proceeding. Portions of his condemnation testimony follow:
As Acquisition Officer are you familiar with the maps and things that you have?
A. I am.
Q. Do you have a map that will reflect a true picture of the subject property, which the Judge earlier, I don't know if he read it yet, which I believe is described as that certain lot or parcel of land bounded on the north by Jackson Street, on the east by the property now or formerly of Atkinson, on the south by the property now or formerly of Patton, on the West by Couevas Street, having a frontage on Couevas Street of forty seven feet eight inches and running back east between parallel lines one hundred and eight and a half feet more or less, said lot of land with all improvements thereon lying and being located in and a part of the Private Claim of Angelique Fasier, designated as U.S. Government Township Plat, Section Number Twenty Seven, Township Seven South, Range Nine West, Harrison County, and being the same property acquired by Miss Helen Joachim by deed dated January 21, 1946 as recorded in Book 282, pages 26 and 27 of the Record of Deeds of Harrison County, subject, however, to the east twelve feet of the above property heretofore conveyed to United Gas Company by deed dated September 16, 1965, as the same is recorded in Book 563 19 of the Land Deed Records of Harrison County, Mississippi, less, however, approximately the north six and sixtenths feet used for the widening of Jackson Street hereby retained by the City of Biloxi, Lot 33, Parcel 6 of the Property Map SD 3 Project Mississippi R 30, prepared by Thomas Seabrook and Associates?
A. Yes, Sir, I have such a map.
Q. I refer that as the subject property, would you please tell us what map you have?
A. This is the Project Area Map S D 1 that I have here.
Q. Is that the same as S D 3?
A. Not exactly the same, but it does show the property.
Q. It does show the property?
A. As you described it, yes, Sir.
Q. Does it have the same lot and block number?
A. Yes, Sir, it does.
Q. What is that?
A. It is 33, Block 33, Parcel 6.
Q. Lot 33, Parcel 6?
A. Correct
BY MR. GUICE: If your Honor please, I would like to introduce that into evidence.
* * * * * *

*719 BY MR. GUICE: Would you mark that Parcel 6 of Block 33 on it, please? (Witness complies with request).
A. It is this parcel of land right here.
[After Smallwood was qualified as an expert appraiser, the following ensued]:
BY MR. GUICE:
Q. What was the fair market value of the subject property on November 1, 1971, the date of filing of this lawsuit and date of taking in this case?
A. I consider the fair market value to be Twenty Two Thousand, Five Hundred Dollars.
Q. If the jury would return a verdict of that figure, would the Housing Authority pay that?
A. Yes, Sir.
* * * * * *
BY THE COURT: Mr. Frey, do you desire to testify, or make any statement as to whether or not you accept that valuation or testify yourself about the value of it?
BY MR. FREY: That figure is acceptable, Twenty Two Thousand Five Hundred.
BY THE COURT: Let the record show that Mr. Frey has announced to the Court that the offer that is made by the Housing Authority of the City of Biloxi of Twenty Two Thousand Five Hundred Dollars for the ownership and the passage of title of this property, which is owned by himself and his brother, and that he is duly authorized to represent his brother, is acceptable to them. You may proceed.
BY MR. GUICE: We have no further evidence, Your Honor.
BY THE COURT: Mr. Frey, do you have any testimony you would like to have presented at all?
BY MR. FREY: No, Sir.
From the above testimony, it is clear that Abe Frey was present when testimony was received concerning the appraisal value of the two lots, being Parcel 33-6. Also, a map SD-1 (almost identical to Map SD-3 referred to at trial and referenced in the judgment) was utilized at trial to indicate the exact property to be condemned. Smallwood encircled in red the property to be taken which included both the northern lot and disputed southern lot.
Abe Frey readily accepted the $22,500 without expressing any reservation about the lots condemned. On deposition, Frey testified:
Q. Going back to the condemnation proceeding, I gather that a question arose in your mind sometime during the course of the proceeding, that the proceeding wasn't quite cricket, if you know what I mean, and that they may have been taking more than you thought they were taking. Am I correct in that assumption?
A. If I had thought about it, then I would have been thinking they would take it and reimburse us.
Q. Did you have the impression during the proceedings that they were condemning both lots, 129 and 130?
A. I felt that it was moving away from this specific instrument.
Although there may have been some mental reservation on Frey's part, he did not make it known at the condemnation trial so that he is now estopped to assert title to the disputed lot. By payment of the $22,500 for Parcel 33-6, the City relied on Frey's acceptance of the sum to its detriment. See Thomas v. Bailey, 375 So.2d 1049 (Miss. 1979).
The fact that Rose Spector Frey was not a party to the condemnation suit is of no consequence for "it is the general rule that an estoppel operates on the privies of the original party." Wabash Drilling Co. v. Ellis, 230 Ky. 769, 20 S.W.2d 1002 (1929), as cited in Cummings v. Midstates Oil Corporation, 193 Miss. 675, 704, 9 So.2d 648, 655 (1942).
In Phelps v. Clinkscales, 247 So.2d 819 (Miss. 1971), the defendant in a prior partition proceeding had openly agreed to partition of certain property and thereafter had attempted to convey to his son the entire parcel of the partitioned property. This *720 Court held the defendant barred by equitable estoppel to assert title to the partitioned land. In the present case, Abe Frey agreed in open court, the eminent domain proceeding, to accept $22,500 for Parcel 33-6, which obviously contained both lots. Therefore, we are of the opinion they are estopped to assert title to the 71 foot lot previously condemned.
We do not reach the merits of the res judicata and accord and satisfaction issues; for regardless of the prior cloud suit brought by the Freys, estoppel acts as a bar to their claim of ownership to the subject property.
This brings us to the second assignment of error that as a matter of law the chancellor erred in failing to confirm title to the disputed property in the City as the property sought to be confirmed is a portion of the same property that was taken in the prior eminent domain proceeding.
We are of the opinion that the City sufficiently deraigned and proved its title to the disputed property in accordance with MCA § 11-17-35 (1972). The City took title to Parcel 33-6 by condemnation proceedings in 1972 as evidenced by the deeds and judgment. The effect of the judgment is, by operation, the same as if a deed were made conveying the same rights. Baldwin v. Mississippi State Highway Dept., 187 Miss. 642, 193 So. 789 (1940).
An examination of the description of property in the judgment reveals an adequate description by monuments of the entire parcel 33-6, including the 47.8 foot lot and the 71 foot lot. "[A] call for natural or artificial monuments will prevail over courses and distances in discrepancies in deeds... ." O'Herrin v. Brooks, 67 Miss. 266, 274, 6 So. 844, 845 (1889). The described distance is 47.8 feet by 108 1/2 feet; however the monuments described indicate a distance of approximately 118.8 X 108 1/2 feet which would include both the northern and southern lots contained in Parcel 33-6. The property condemned is described as being "bounded on the North by Jackson Street, on the East by property now or formerly of Atkinson; on the South by property now or formerly of Patton: and on the West by Couevas Street." This boundary description is also more definite and certain than the reference to 47.8 feet because there is no cardinal point of beginning for the 47.8 feet. It is impossible to discern the northern or southern boundary of the described property by the language "having a frontage on Couevas Street of 47'8"." Concerning construction to be given deeds, this Court stated in Dunn v. Stratton, 160 Miss. 1, 7, 133 So. 140, 142 (1931), the following:
It is the duty of courts in construing deeds to effectuate the intention of the parties, but, since deeds must be in writing, the intention must be found in the writing either by way of complete delineation of the description on the face of the deed or by dependable references therein made which, when applied, render the delineation complete. The sundry rules that have been formulated by the courts for the interpretation of descriptions are but aids in arriving at the probable true intention of the written instrument. These rules, so far as applicable to this case, may be summarized thus: In construing a deed, (1) effect must be given, if possible, to each item of the written contents and no item included in the deed as a part of the description is to be rejected as erroneous, or shall be varied, so long as it is reasonably possible to make all of them harmonize; and (2) those parts which are the more certain and dependable as descriptive items will interpret those items which are the less certain and dependable, and, when it is necessary in order to satisfy and harmonize all items, the more certain will, if reasonably possible, draw to themselves those that are the less certain; and (3) if any item is to be rejected as impossible, or varied as erroneous, the item which is the less certain and about which it is the more probable the grantor was mistaken will be thus rejected or varied.
Therefore we are of the opinion the language "bounded on the north by Jackson Street, on the East by property now or *721 formerly of Patton; and on the West by Couevas Street" is more certain and dependable as descriptive items and will interpret the less certain descriptive term "having a frontage on Couevas Street of 47'8"." See also Moore v. Kuljis, 207 So.2d 604, (Miss. 1967); Texas Company v. Newton Naval Stores Co., 223 Miss. 468, 78 So.2d 751 (1955).
In addition, the property is also described as "Being Parcel 33-6" and reference is made to property Map SD-3. Not only does the call for natural and artificial monuments prevail over courses and distances when interpreting a deed, but "the call for the lot itself must prevail over any description by courses and distances, or other descriptive particulars... ." O'Herrin v. Brooks, supra.
We conclude the court erred in not confirming title to the disputed area in the City of Biloxi and in not dismissing the cross-bill of the Freys.
REVERSED AND JUDGMENT HERE FOR THE CITY OF BILOXI.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.