ROY NOBLE LEE, Chief Justice,
for the Court:
The State Highway Commission of Mississippi (Commission) has appealed from a judgment of the Circuit Court, Yazoo County, Mississippi, denying it possession and/or damages for a building allegedly condemned by the Commission in connection with taking a right-of-way for highway improvement. The appellees are J.H. Pennington and Gladys Pennington, his wife, lessors of the land, and Kenneth W. Hel-ton, Charlotte D. Helton and James C. Myers, lessees of the property, who had built and were operating a Dairy Queen restaurant upon the Pennington property under the name of “Charmar Inc.”. Hereinafter, the appellees will be referred to as Charmar. The Commission has assigned three errors in the trial below:
I.
THE LOWER COURT ERRED IN REFUSING TO GRANT THE COMMISSION AN INJUNCTION ENJOINING THE APPELLEES FROM INTERFERING WITH THE COMMISSION AND ITS CONTRACTORS IN ENTERING UPON THE APPELLEES’ PREMISES, TAKING POSSESSION OF THE SUBJECT BUILDING AND REMOVING IT THEREFROM.
II.
THE LOWER COURT ERRED IN REFUSING TO ALLOW THE COMMISSION TO PUT ON PROOF AS TO THE FULL AMOUNT OF RESTITUTION TO WHICH IT IS ENTITLED BASED UPON THE AMOUNT PAID BY THE COMMISSION IN THE EMINENT DOMAIN PROCEEDING TO ACQUIRE THE BUILDING AND TO AWARD THE COMMISSION DAMAGES BASED THEREON.
*1133 III.
THE LOWER COURT ERRED IN REFUSING TO ALLOW THE COMMISSION TO OFFER PROOF OF AND TO AWARD DAMAGES UPON THE VALUE OF THE BUILDING IF MOVED INTACT TO AN IDENTICAL SITE LESS THE COST OF MOVING THE BUILDING AND REESTABLISHING IT ON THE NEW SITE.
FACTS
In October of 1984, the Mississippi State Highway Commission sought to widen a. portion of Highway 49 East located in Ya-zoo County, Mississippi. The new right of way would take part of real property (2900 square feet) owned by J.H. and Gladys Pennington (Penningtons) and leased by Kenneth Helton, Charlotte Helton and James Myers. The Heltons and Myers owned and operated a Dairy Queen fast-food restaurant under the business name of “Charmar, Inc.” on the Pennington’s property. The right of way would take approximately the front nine (9) feet of the Dairy Queen restaurant.
The Commission could not agree with Charmar and the Penningtons on compensation for the property. Therefore, it filed suit in the Special Court of Eminent Domain in Yazoo County to condemn the property. In its valuation of the property to be acquired, the Commission, pursuant to its custom when part of a building was to be taken, took into account the purchase of the entire Dairy Queen restaurant. Therefore, according to before and after rules, it valued the property (2900 square feet land and entire building) before the taking to be $191,315 and assigned an after value taking of the property to be $0. The Commission contracted with APAC-Mississippi Inc. and New-Cros Inc. to have the Dairy Queen building, as well as buildings on other properties along the right of way, removed.
After its valuation had been submitted to the Court, but before trial, the Commission learned that Charmar had intentions of renovating the building. Upon learning this, the Commission took the deposition of Kenneth Helton for a second time and asked him about his understanding of what was to become of the building after the condemnation proceedings were completed. Hel-ton was evasive about whether he understood that the Commission was to acquire the entire building. Subsequently, the Commission asked for a continuance so that it could make a valuation which would be based on taking only the part of the building which was on the right of way and the renovation of the remainder of the building. The Court refused.

Eminent Domain Court Proceedings

At the Eminent Domain trial, Jimmy Davis, the appellees’ real estate appraiser, stated on direct and cross examination that the building would be removed. Specifically, on cross-examination, he stated that it was not feasible to renovate the building. Kenneth Helton admitted that their own appraisers and the appraisers for the Commission made valuations based on the assumption that the building would be torn down. Helton stated that, after part of the building was taken off, there would not be a business. When the attorney for the Commission attempted to ask Davis and Helton about renovation of the building, the attorneys for the appellees strenuously objected and their objections were sustained.
Both Carl Middleton, the assistant project engineer and Bill Milton, the staff appraiser for the Highway Department, testified that the building would be removed. Milton testified that it was common procedure for the Commission to acquire the whole building when the right of way was to take five or ten feet of a building. He stated the buying and removal of the building was discussed with the owners. He also testified, over objection, that if the building were renovated its after value would be more than zero. Counsel for Charmar and the Penningtons argued to the jury that the entire building was to be destroyed and it should award damages to their clients for this loss.
The jury returned a verdict in the *1134 amount of $197,715 [1]
Charmar then immediately tore down the portion of the restaurant on the right of way and used part of the materials to patch up the building and continued to operate the business. When the Commission attempted to come upon the property to remove the building Charmar refused to leave.

Chancery Court Proceedings

The Commission filed suit in Chancery Court against Charmar and the Penning-tons and petitioned the court to: declare ownership of the building in the Commission; enter an injunction to prevent Char-mar from interfering with the Commission’s removal of the building or in the alternative to award the Commission a judgment for the value of the building.
After discovery, Charmar and the Pen-ningtons filed separate motions for summary judgment. Each party argued: the Commission did not acquire any property not specifically described in the condemnation petition (i.e. the Commission did not acquire the part of the Dairy Queen not on the right of way); and the Commission’s suit was a collateral attack on the judgment of the eminent domain court which was barred by the doctrine of res judicata.
The Chancery Court, in preparing to hear the motions for summary judgment, determined that it did not have jurisdiction to hear the case and transferred it to circuit court. The chancellor reasoned that the Commission would not suffer any substantial or irreparable injury if it were not allowed to tear down the building. Therefore the elements to obtain an injunction were not met. The chancellor further held that the Commission had an adequate remedy at law. It could sue for the value of the materials converted by the defendants from the portion of the building situated on the right of way and it could sue for the value of the portion of the building situated on the defendant’s land.

Circuit Court Proceedings

After the case was transferred to Yazoo County Circuit Court, Charmar and the Penningtons renewed their motions for summary judgment. In ruling on the motions, the circuit court issued an order and opinion dated June 25, 1987. In its opinion, the circuit court held that there were two questions: 1) What was taken in the eminent domain suit? 2) Assuming that the Commission was deprived of a portion of what was taken, what damages were due? On the issue of what was taken, the Court stated:
The record clearly reflects that this case was tried on an assumption that the entire building would be removed. The Commission’s expert testified that the building was a part of what was being purchased. The defendants’ attorneys argued forcefully that the building would be removed. The fact that the state had contracted to remove the building was admitted into evidence and relied upon. Defendants’ expert testified about the required repaving and removal of the building’s slab. It is true that the defendants’ expert opined that the remaining value was zero whether the building was removed or not but that fact has little bearing on this court’s determination of the scope of the final judgment. It is the construction of that judgment which determines the issue whether the Commission acquired title, and the court must construe the judgment in light of its language and the record on which it was based.
The judgment initially refers to the property described in the petition which is limited to the metes and bounds description of the land with no reference to improvements or [sic] personality. The judgment goes on, however, to vest “ownership of such property, including improvements” (emphasis supplied) in the Commission. This language lacks clarity, (Cf. State Department of Highways v. Champagne, 356 So.2d 1136 *1135 (La., 3rd Cir.1978) “... together with all the buildings and improvements situated wholly or partially thereon”) but it can be construed to include the entire building, and, under the teaching of Biloxi Development Commission v. Frey, 401 So.2d 716 (Miss.1981), this court will so construe it. The Commission acquired title to the entire building.
On the issue of damages the Court stated:
Moreover, this court agrees with the Chancellor in every respect and specifically in his conclusion that the Commission has an action for damages against the Chamar defendants for the conversion of the salvage value of the building materials on both the land acquired and the remaining land.
The Court further stated:
Assuming, that the Commission is correct, [that it paid for and acquired title to the entire building] this court holds that it would be entitled to recover damages for having been wrongfully deprived of salvage, or such other value as it can establish that the remaining building had, had it been allowed to remove it.
The Court held that the Chancellor had decided the equitable issues prior to transfer and, as such, was the law of the case and would not be disturbed. As to the unappealed verdict of the eminent domain jury, the Court ruled it was conclusive as to compensation and the Commission should not be allowed to relitigate the value of the property taken. The Court noted:
The jury verdict was a general verdict and did not set forth any of the specific elements of damages which were included in the verdict. Consequently, it is impossible to determine the specific elements of damage which the jury included in its verdict. It is also impossible to determine how much the jury compensated the Defendants for the remaining Dairy Queen Building although the conclusion is inescapable that some compensation was allowed.
The Court held the jury verdict could not be collaterally attacked in the absence of fraud and there was none.
The case went forward on the sole issue of “the damages to which the Commission was entitled”. On August 12, 1987, Char-mar filed a motion in limine in which it sought to exclude any evidence or testimony with respect to:
1. Any method of valuing the Dairy Queen building other than the fair market value of the building materials which comprised the building on the relevant valuation date;
2. Any method of valuing the Dairy Queen building which values the building on the present site or reestablished on another identical or similar site;
3. The amount of compensation received by the Defendants, or either of them, in the eminent domain proceedings;
4. Whether the Commission paid for the building on the Dairy Queen site in the eminent domain proceedings and the alleged amount thereof;
On August 17, 1987, a hearing on the motion was held. The Court opened by stating:
THE COURT: We are before the Court on a motion in limine with regard to a proposed method of valuation of the loss suffered by the State Highway Commission. That method is described in the Second Amended Answers to Interrogatories, specifically the answer to Interrogatory No. 2 which is a part of Exhibit “I” to this motion, [establishing the value of the building by testimony that the building will be relocated to another site.] The Court, in its previous order and opinion on motion for summary judgment, found that the Highway Commission was entitled to recover damages for having been wrongfully deprived of salvage or such other value as it can establish that the remaining building had, had it been allowed to remove it. When the Court used that language, the Court contemplated that there was a possibility that a valuation method such as shown in the Second Amended Complaint could be utilized. In the Defendants’ motion in limine and in arguments thereon, they raised the issue as to the speculative *1136 nature of that method of valuation, as well as other issues.
The Court finds that the State Highway Commission has no legal authority to proceed in accordance with the method of valuation and that method of valuation is speculative and for that reason the motion in limine is granted.
The Court further held that the Commission could not put on evidence of compensation that either of the defendants received in the eminent domain proceedings. Also, the Commission could not introduce evidence of the amount paid for the building, (i.e. the court granted No. 3 & 4 of Char-mar’s motion in limine)
The Commission then made a proffer of testimony with respect to moving and relocating the building. Counsel for the Commission stated that Mr. William D. Milton, an expert real estate appraiser, would have testified that the value of the building if relocated on an identical site in the same market area would be $160,255. The cost of moving would be $54,050 and the difference would be $106,205, which would be the net fair market value of the building once it had been removed and re-established in a new site. Mr. R.C. Raney, an expert in the field of moving buildings, would have testified based on his twenty-eight (28) years of experience in moving thousands of buildings and having moved 3 or 4 brick buildings, slab and all intact, that the reasonable cost of moving the building intact would be $50,000.
In light of the Court granting Charmar’s motion in limine, the only remaining method of valuation was the fair market salvage value of the building. To resolve this only remaining issue, the parties waived a jury trial and stipulated that the net fair market salvage value of the building as of March 12, 1985 was $4,250.
LAW
We address the assigned Error Number I which raises the issue of whether or not the lower court erred in refusing to grant the Commission an injunction enjoining the appellees from interfering with the Commission and its contractors in entering upon the premises of appellees, taking possession of the building and removing it from the property. We are of the opinion that the assigned error has merit and is dispositive of the appeal. Therefore, it will not be necessary to address the other assigned errors.
The eminent domain suit, which was the genesis of the present appeal, was for the purpose of acquiring a twenty-nine hundred square feet tract of land, together with a Dairy Queen building, although the building itself was not specifically described in the application. The eminent domain jury found full value for the appel-lees, who were all the parties interested in the property, and fixed due compensation for the taking of the land and building at $198,715.00 The judgment provided “... ownership of the said property, including improvements, shall be vested in petitioner and it may be appropriated to the public use as prayed for in petition.”
It is obvious from the record that the eminent domain case was tried by all the parties on the premise and theory that the Commission was acquiring a small strip of land and the Dairy Queen building. Char-mar’s real estate appraiser, Jimmy Davis, stated on direct and cross examination that the building would be removed and that it was not feasible to renovate. Kenneth Helton, one of the owners of Charmar, admitted that their own appraisers and the appraisers for the Commission made their valuations based on the assumption that the building would be torn down, that after the building was removed, there would not be a business; and that the business value would be nil. Testimony as to any other value was held inadmissible.
During opening statements at the eminent domain trial, Mr. James L. Jones, attorney for Charmar, Kenneth W. Helton, Charlotte D. Helton and James C. Myers stated that the building would be virtually worthless in the after condition and, in his closing argument to the jury, he emphasized the fact the building was going to be removed and the business would be gone. Excerpts of his argument follow:
*1137 This building is going to be torn down, the foundation is going to be removed, it is going to be gone. This business is going to be gone. ... This building is going to be gone, it’s going to be removed, the highway is going to be out there some several years in building.... The Dairy Queen business is not going to be there, and we are going to have this huge pile of fast-food restaurant equipment — the counter, the seats, the lights, the wallpaper. We are going to have all of that. It’s going to be sitting out there.
*****:}:
... Iam not arguing it be paid for, ladies and gentlemen. We are going to have all of this equipment, we don’t know where it’s going to be stored, they are not offering to pay for us to do anything with it. They are not offering to pay us to build the new Dairy Queen restaurant, they are not offering to pay us to acquire a new piece of property, they are not offering to pay for the expenses of new financing, they are not offering to pay us for what is going to happen to these employees who are not going to have a job for any period of time if Mr. Helton can ever re-open his business.
sjc 4= '-if ¡fc ‡ s-s
That Dairy Queen restaurant is going to be torn down, brick, stone, and mortar, foundation, and everything to the ground. It’s not going to be there, and the lease provided that no future building can be built closer that 10 feet to that line, no future building. But the zoning ordinance goes further and it says you can’t build except 50 feet back from the front line. Now, do you think a buyer is going to ignore those facts? ... He’s going to evaluate every one of those factors and when he evaluates every one of those factors, you are not going to have a substantial value on this piece of property in the after condition.
Mr. John Holmes, attorney for J.H. and Gladys Pennington, argued to the jury in his closing statements that the Commission was taking the entire Dairy Queen restaurant building and selling it to a contractor. He said:
In 1984, when the Highway Department decided to build a road through the Dairy Queen restaurant and not only take a portion of it but take the whole building and sell it to the contractor, what did you have before they decided to tear this property apart? ... The Highway Department took its frontage, took the 5-year easement on a large portion of the property, built a highway through the front the building, contracted with the general contractor to move the building away, and what did they leave — a partially torn up mass of concrete and two outhouses on the property.
What hope did they leave for the future? None. ... He can’t use this site up here because of the 50-foot (sic). The only place it can be built is back here in this steep grade which is in the blue.
Appellees’ appraiser, Jimmy Davis, testified that, after the take, the building would be gone: that the landowner would have to remove the concrete foundation left on the premises; that one could not put a fast-food restaurant on the site, and that he had been aware since the previous June that the Commission intended to acquire and compensate for the whole building. Excerpts from his testimony follow:
Q. If the building were renovated on its present location it would be grandfathered in as far as set back, would it not be?
BY MR. HOLMES: If Your Honor, please, this question is in direct disregard of the orders that the Court ordered us to follow — the possibility of this building. This building is going to be taken off. That has already been established by the general contractor, so he’s talking about remodeling or re-improving the building itself. The building will be gone.
Q. Mr. Davis, is it feasible to renovate this building on this particular site?
A. No sir. It’s not feasible at all, no, sir.
Q. Mr. Davis, you were aware of the fact all the way along, since last June, *1138 you have known the Highway Department intended to take and pay for the whole building, did you not?
A. Yes sir. I think they were proper.
* * * * * ‡
Q. In other words, I believe I understand you correctly to say that this building, whether the contractor took it off, whoever took it off, it had to be removed?
A. Yes sir.
Q. After you damaged it in that way, it had to be removed, is that right?
A. That’s correct, yes, sir.
Regardless of the fact that the eminent domain case was tried on the theory of compensation for the entire building and the jury returned a verdict in excess of $198,000.00 in damages, the appellees refused to permit the Commission to remove the building from the premises. The present suit followed, seeking relief in the Chancery Court of Yazoo County by way of injunction and equitable relief to take possession of, and remove, its building. The Chancery Court held that the Commission had a full, complete and adequate remedy at law and that the Chancery Court, therefore, had no subject matter jurisdiction. The Chancery Court then transferred the case to the Circuit Court of Yazoo County, Mississippi, pursuant to Section 162 of the Mississippi Constitution of 1890. That court granted appellees motions for summary judgment in part and denied injunc-tive relief.
In Biloxi Development Commission v. Frey, 401 So.2d 716 (Miss.1981), the city of Biloxi filed a petition for condemnation of property owned by the Freys to acquire a lot 71 feet and another lot with a frontage of 47.8 feet. The latter lot was described with particularity in the petition for condemnation but the remaining lot was not described by metes and bounds. The Freys received $22,500.00 for their land and later, when the Biloxi Development Commission brought suit against the Freys to quiet title in the 71 foot lot, the trial court determined that it could not alter the judgment of the eminent domain court and denied confirmation of title in the city. This Court reversed and rendered judgment for the city, applying the doctrine of equitable estoppel. The Court remarked that the Freys readily accepted the sum of $22,500.00 and upon payment of the sum, the city relied upon the Freys acceptance to its detriment.
In Coral Drilling, Inc. v. Bishop, 260 So.2d 463, 465-66 (Miss.1972), the Court said:
Courts will not permit litigants to solemnly affirm that a given state of facts exists from which they are entitled to a particular relief, and then afterwards affirm, • or assume from which they are entitled to inconsistent relief.
Also see Standard Oil Co. v. Crane, 199 Miss. 69, 23 So.2d 297 (1945), where the Court said:
[A] court has the right, if not the duty, to hold a litigant to the position which he takes in seeking its aid and, by assuming in his behalf utter good faith in the first instance, to reproduce such assumption later, even to his hurt. Certainly, insincerity or bad faith may never be pleaded in a tribunal which demands the contrary.
We are of the opinion that law and equity will not permit persons to assert a position contrary to one taken in prior litigation and that the appellees, in the present case, are judicially and equitably estopped from taking the position here entirely opposite and contradictory to their position in the eminent domain proceedings. Daughtrey v. Daughtrey, 474 So.2d 598 (Miss.1985); Banes v. Thompson, 352 So.2d 812, 815 (Miss.1977); PMZ Oil, Co. v. Lucroy, 449 So.2d 201, 206 (Miss.1984); 1977); PMZ Oil, Co. v. Lucroy, 449 So.2d 201, 206 (Miss.1984); Coral Drilling, 260 So.2d at 465-99; Thomas v. Bailey, 375 So.2d 1049, 1052-53 (Miss.1979); Resolute Ins. Co. v. State, 290 So.2d 599, 602 (Miss 1974).
Until now, the Commission has not been afforded a full, complete and adequate remedy at law and, except for this Court, would not obtain that remedy. This litigation involves property rights between citizens and the State. No Court can adjudicate those rights better and more expedi *1139 tiously than a Court of equity. The Chancery Court of Yazoo County should have retained jurisdiction and, clothed with the mandates of law and guided by equity, should have disposed .of the matter. This Court, therefore, holds the following:
1. The judgment of the lower court is affirmed on its adjudication that the Commission is vested with title to the Dairy Queen building (improvements).
2. The judgment of the lower court is reversed and judgment is remanded here in part granting unto the Commission the right to enter upon the property of appellees and remove the Dairy Queen building therefrom within a period of 60 days.
3. That all appropriate process and writs issue for the enforcement of this decision.
AFFIRMED IN PART. REVERSED AND REMANDED IN PART.
HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, BLASS, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
PITTMAN, J., not participating[2].

. The jury verdict was $197,715.00 but it was corrected by the parties and the attorneys to $198,715.00 in order that the sum of the compensation and damages found to be due lessor and lessee be mathematically correct. The award was apportioned $59,614.50 to J.H. Pennington and $139,100.50 to Charmar, Inc.