HOLCOMB, et al. *v.* McCLURE.

Division B.   June 11, 1951.

No. 37957 (52 So. (2d) 922)

L. **Barrett Jones, Ben Stevens** and **Evelyn Hunt Conner,** for appellants Holcomb.

**C. R. Bolton,** for appellee and cross-appellant McClure.

**Adams & Long,** for appellee Shaw.

**Alexander, J.**

Bill was filed by appellee to confirm his title to a certain lot in the City of Tupelo, and to remove the cloud cast by the claim of Mrs. Myrtle C. Shaw to a strip 45

feet wide along the north side of this lot, and in the alternative for a decree against W. E. Holcomb and wife upon their warranty of title to appellee.

The property involved is a lot described as beginning at the southeast corner of the southwest quarter of section 30, township 9, range 6 east, and running north along the west boundary of Madison Street, a distance of 225 feet. The western calls of the property are not for the moment important since the controversy centers in the amount of frontage on Madison Street. The other calls are left to be adjusted with reference thereto.

Appeal is from a decree sustaining the cross-bill of Mrs. Shaw and confirming her title to a lot 65 feet fronting on Madison Street, adjudging appellee to have acquired a frontage of only 180 feet, and awarding damages in favor of appellee against the Holcombs on their warranty in the sum of $2000. There is a cross-assignment of error by appellee attacking confirmation of title to the 65 foot strip in Mrs. Shaw.

The matter is fraught with difficulty, involving as it does an examination of all precedent deeds with a view to establishing not only line measurements but also the location of fixed monuments and boundaries. The chancellor detected the original source of the disputes as arising from the fact that many people assumed that the starting point almost invariably used—the southeast corner of the southwest quarter of section 30—was located in fact on the south line of Jackson Street rather than at a point 45 feet north. Madison Street is the east boundary and Jackson Street is the southern boundary of the lot in question.

The deed from the Holcombs to McClure warranted title to a lot beginning at that corner and running north 225 feet. These termini have been established by surveys and accepted by the chancellor. The conflict arises when it is found that a point 225 feet north of the established corner invades the lot of Mrs. Shaw for a distance of 45 feet.

Now, while most of the deeds exhibited as being in the chain of title use this corner as a point of beginning, practically all of them utilize established monuments or other deeds to identify the locations.

The deed, which Mrs. Shaw asserts is adversely affected by the claims of appellee, described as a beginning point a location 290 feet north of the established southeast corner of the southwest quarter of section 30. This point of beginning is further described as the southeast corner of the lot ''now owned by W. E. Ballard.'' From this point of beginning, the lot is described as running south 65 feet. It is seen, therefore, that superficially there is no inconsistency between the recited locations of the lots of McClure and Mrs. Shaw. A frontage on Madison Street of 290 feet would admit two lots of a width of 225 and 65 feet respectively.

The discrepancy arises, however, from the fact that the lines of the Ballard lot were found by the chancellor to be established. Its frontage is 100 feet on Madison Street and it lies immediately south of what is often referred to as the Hagood or Kirk lot. The latter lot has as its south line a fixed stone wall and has been so identified for many years. Some of the lots which lie north of Mrs. Shaw's 65-foot lot are described with reference to the north line of Lot 51 of the Weatherford and Hilderbrand Survey, and the deeds make continual references one to another. So that when one proceeds southward from the north line of Lot 51, each succeeding description being tied to an earlier deed or monument, there is a certain clash with descriptions which proceed northward from Jackson Street or the half-section corner, provided the line measurements are accepted absolutely. As already stated, there would be no discrepancy if the starting point had been 45 feet south of the now established corner. But this is not the fact and the warranty deed to appellee calls for an overlap onto Mrs. Shaw's lot of 45 feet.

We need not survey the muniment of title whereby Mrs. Holcomb got title to these lands, except to say that while it appeared to indicate a lot fronting on Madison Street 290 feet it was further described with reference to the Hagood lot whose south line lay 100 feet north of appellants north line. The Hagood lot, as heretofore stated, is too well established and identified to be displaced by recited distances.

When monuments and distances are both given, the monuments control and the distances must be lengthened or shortened if necessary to prevent inconsistency. Burdick on Real Property, Section 284, page 761; Devlin on Real Estate (3d Ed.) Section 1033. Compare Brimm v. McGee, 119 Miss. 52, 80 So. 379; 26 C. J. S., Deeds, Section 30; 16 Am. Jur., Deeds, Sections 275, 276.

In the absence of an accompanying map, it is well to explain that the Hagood lot is clearly established as lying 345 feet north of the north line of Jackson Street or the south line of Section 30. Immediately south thereof is what is well known as the Ballard lot which has a frontage on Madison Street of 100 feet. Just south of the Ballard lot is the lot of Mrs. Shaw here involved. This lot has a frontage of 65 feet. There is therefore left north of Jackson Street, or the section line, only 180 feet. The decree adjudged title in appellee to such frontage and confirmed the title of Mrs. Shaw to 65 feet frontage just north thereof. Thus appellants' warranty to appellee failed to the extent of a 45-foot frontage.

It is to be underlined that appellants' warranty to appellee was not tied in with any fixed boundary or monument as were the other deeds but covered a definite frontage on Madison Street of 225 feet. To insure clarification of the picture, a point 225 feet north of Jackson Street runs over into the Shaw lot a distance of 45 feet. For this failure of warranty, the chancellor upon testimony fixed the value of this strip, or the extent of appellee's damage at $2,000.

There seems to be little doubt that there was a rather general assumption that the southeast corner of southwest quarter of Section 30 lay 45 feet south of its actual location. But this is not a suit for reformation.

In this connection, the following expression in the deed from appellant to appellee is sought for refuge: "It being intended hereby to describe and convey a lot 320 feet fronting on Jackson Street and 225 feet fronting on Madison Street, except that portion of which lot is now being used as a street, Jackson and Madison, either or both." This reference discloses some uncertainty as to the location of Jackson Street which was not definitely laid out until comparatively recently. In former years, part or all of the proposed street area had been used as a lot but there was no part of the lot conveyed that was being used as a street. ▇▇ ▇ The quarter section corner had been long established. It could not be changed by neighborhood rumor or mere assumption.

In the decree the chancellor fixed the quarter section corner on the east side of Madison Street. No point is made of this, and since the south line of Section 30 has been established, this does not affect the frontages on Madison Street. It is these only which are here argued.

We thus dispose of the fact of liability of appellants under their covenant of warranty, which of necessity affirms the confirmation of the title of Mrs. Shaw to the 65-foot lot.

There remains to be examined the amount of damages. Appellants argue that the true rule is that set out in 14 Am. Jur., Covenants, Section 149, to wit: "Thus, in the case of a partial breach of a covenant of warranty by reason of a failure of title to a portion of the estate conveyed resulting in eviction from that portion of the premises, the measure of damages is the relative value which the part as to which the title failed bears to the purchase price of the whole estate. A similar rule applies where the action is based upon the covenant of seisin; in such case the covenantee recovers pro tanto only."

We find this rule too general in its scope. The better rule is found in 21 C. J. S., Covenants, Section 142, p. 1012, where the fact of peculiar advantages attached to the lost area must be taken into account.

■■ The measure of damages for a partial failure under a covenant of warranty of title to real property is the difference between value of the tract as warranted and the value of the tract without the lost portion. Testimony upon this point must relate to the time of its purchase. Brooks v. Black, 68 Miss. 161, 8 So. 332, 11 L. R. A. 176; Meredith v. Pratt, 208 Miss. 412, 44 So. (2d) 521.

■■ Computation upon a mere proportionate or average basis is not proper in the instant case where there was testimony that the lost 45 feet was of more than average value. Compare Griffin v. Reynolds, 17 How. 609, 15 L. Ed. 229.

We are of the opinion that the testimony as to value did not relate to the time of the purchase and was erroneously based upon appraisals of the 45 feet as an isolated tract. The cause will thereby be affirmed in all respects save as to the measure of damages and is remanded for hearing on this issue alone.

Affirmed on liability and remanded on issue of damages.