455 So.2d 753 (1984)
Raymond R. DUANE and Alice P. Duane
v.
Robert J. and Joyce L.B. SALTAFORMAGGIO.
No. 54326.
Supreme Court of Mississippi.
August 15, 1984.
*754 Lucien M. Gex, Jr., Gex & Adams, Waveland, for appellants.
Walter J. Phillips, Gex, Gex & Phillips, Bay St. Louis, for appellees.
Before ROY NOBLE LEE, ROBERTSON and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
The Chancery Court of the First Judicial District of Harrison County, Mississippi, heard and dismissed with prejudice appellants' claim for a mandatory injunction requiring appellees to remove improvements from the Duane property and for civil trespass.
Three errors are assigned:
(1) Did the trial court err in finding that an erroneously placed artificial monument took precedence over the official plat of record?
(2) Was it error to fail to find that there was a conflict between course and monument when in fact there was a conflict between monuments?
(3) Did the trial court err in failing to hold that where parties take property by reference to a recorded plat the recorded plat determines the dimensions of their lot?
On July 10, 1978, appellants, Duane and wife, purchased Lot 8, Block 12, Section B-1, Pass Christian Isles Subdivision, from Wallace C. Walker. Duanes' deed described the lot which they purchased as "Lot 8 of Block No. Twelve (12) of Pass Christian Isles, Section B-1, Harrison County, Mississippi, according to the official map or plat thereof[1] on file and of record in the office of the Chancery Clerk of Harrison County, Mississippi, in Plat Book 30 at page 18." On August 16, 1978, Robert and Joyce Saltaformaggio purchased the adjoining Lot 7. Their deed used the identical reference for Lot 7 that was contained in the Duane deed on Lot 8.
*755 Both deeds contained a restrictive covenant that no building shall be erected, constructed, or maintained on said property in Block 18-A and Block 12 ... "within six feet of any interior side property line."
Prior to building on Saltaformaggio's lot, his contractor hired Lucius Marks to perform a survey on Lot 7. Marks went to the site where he located monuments fixing the front corners of Lot 7. He went 100 feet to the rear of the lot where he found iron rods of the size and type indicated on the plat. Checking toward Lot 12 along the 100-foot line, he found iron rods the correct width apart down through Lot 12. Checking toward Lot 1, he found that Lot 6 was in conformity. He did not find a mark between Lots 4 and 5, but he found one between Lots 3 and 4, which was the correct distance away to form two lots according to the plat. The lot lines created by these monuments formed approximately a 93° angle from Elm Lane.[2] He became concerned because he assumed from the plat that the lot lines were at 90° angles.
Returning to Lot 7, he turned a 90° angle and looked again for markers. This time he located one six feet away from that which he previously found between Lots 3 and 4. This rod formed a 90° angle from Elm Lane. He also found one between Lots 4 and 5, which appeared to him to have been disturbed by the placement of an underground drainage structure. Taken together, the two newly discovered marks would create widths of 58 feet each instead of the platted 55 feet for Lots 4 and 5. Marks also found a 2 1/2 inch pipe at the rear of Lot 1 along Audubon Lane, which formed a 90° angle to Elm Lane.
Faced with these conflicting findings, Marks concluded that the iron rods 100 feet back on Saltaformaggio's lot accurately reflected the lot lines indicated on the plat. His original survey, although incorrectly drafted at a 90° angle, shows the Saltaformaggio lot lines to be established by the iron rods at a 93° angle. It was under this survey that Saltaformaggio's house was built to fit the stakes Marks had established.
In the fall of 1979 a Mr. Marquez, who had purchased Lot 9 in the same block, hired Eugene Richardson to survey his lot prior to constructing his home on Lot 9. Richardson noticed a discrepancy in the lot lines of Lot 9, 8 and 7, and called it to the attention of both Mr. Duane and Mr. Saltaformaggio. Saltaformaggio then hired Mike Cassady to survey his lot again to determine if Richardson's findings were correct. The Cassady survey used 90° angle lot lines and showed an encroachment of the piling and steps of the Saltaformaggio house onto Lot 8 owned by the Duanes. The survey further showed that the Saltaformaggios' bulkhead encroaches onto the Duanes' lot approximately nine feet. Further the survey shows that a considerable portion of the house of Saltaformaggio is encroaching on the minimum six-foot side lot restricted by the deeds to both lots.
Cassady testified at the trial for the Duanes. His methodology consisted of first locating as many of the primary subdivision corners as he could find that were indicated in the original subdivision plat for Block 12. He found one at the corner where Audubon and Elm Lane intersect on Lot 1 and verified it for angle and distance. He located a second corner 150 feet down Audubon Lane from the intersection, which also checked for angle and distance. Cassady then measured down Elm Lane to a third primary point between Lots 12 and 13, and checked this for angle and distance. These three monuments combined to form a 90° angle. He then located 80 to 90 percent of the front corners along Elm Street and they all measured within a few tenths of a foot for distance.
Once Cassady verified the accuracy of the location of the primary monuments and, with the measurements of the plat showing that the lot lines extend back from the street at a 90° angle, he proceeded to locate the auxiliary monuments set 100 feet back. He found some iron rods about 100 feet back which fixed the side lot lines of Lots 1, 2 and 3. These rods formed perpendicular lines with the corresponding corners on Elm Lane, and the distances between *756 the rods on Lots 1, 2 and 3 corresponded to the plat.
However, when he got to Lot 4, the 55-foot width in the plat did not check. He found an iron rod at 58 feet. On Lot 5, another 55-foot wide lot, he found an iron rod at 58 feet. The combined effect of these two errors was to offset the remainder of the 100-foot marks by approximately 6 feet. This caused the Saltaformaggios' side lot lines to stand at approximately a 93° angle from Elm Lane. If this 93° angle formed by the erroneously placed stakes were used for all the lots, there would be a six-foot increase in the width of Lot 1 and a six-foot decrease in Lot 12. Based on this survey and the numbers shown in the plat, he concluded that the intent of the original surveyor was for the lot lines to be perpendicular back from the street. Cassady testified that his theory in land surveying problems of this type is "the monuments that are in harmony control and the conflicting monuments have to be eliminated."
Joe Clarke also testified at the trial for the Duanes. Clarke's survey[3] confirmed Cassady's findings. In Clarke's opinion as a surveyor, there was a conflict between the primary subdivision markers he located and the 100 foot markers beginning with Lots 4 and 5. In his opinion, the three pipes set along Elm and Audubon Lane were the original corners set by the original surveyor. He considered the 100-foot marks to be accessory points. In resolving this conflict, Clarke testified that he relied upon an accepted surveyor's text Brown, Boundary Control and Legal Principles, p. 158 (2d ed.), which he stated gives controlling effect to the intention of the surveyor platting the subdivision. It was his professional opinion that where there is conflicting evidence between corners that are given equal weight, the corners most in harmony in angle and distance to the area shall govern.
Marks testified at the trial for the Saltaformaggios. Based upon his experience as a surveyor, he conceded that the reason that the courses on the lot lines of Lots 1 through 10 were left out on the original plat is because they are parallel to the course for Audubon Lane. As a surveyor, Marks would assume that the angle of the lot lines would be 90° based on the courses of Audubon and Elm Lanes. He disagreed with both Cassady and Clarke that the mark at the rear corner of Lot 1 along Audubon Lane was one of the primary subdivision marks. He admitted that, had he used a 90° angle, this corner on Lot 1 would be correctly placed, but he stated that this was a mark he considered off. He stated that he gave this corner mark no greater importance than the ones he found along the 100-foot line. He also stated that he disagreed with the mark he found the second time between Lots 3 and 4 which, taken with the disturbed mark between Lots 4 and 5, would have created 58-foot widths for Lots 4 and 5. The basis for his disagreement was that he had ten other 100-foot marks which matched the widths on the plat. He admitted that if the angle formed by these 100-foot marks were used it would cause a 6-foot increase in the width of Lot 1 and a 6-foot decrease in Lot 11. He stated that he considered this to be a case of conflict between monuments and courses and distances, so that the general rule that monuments prevail over courses and distances would apply.
The chancellor, in his opinion rendered at the conclusion of the trial, said:
The Court, after hearing testimony and receiving evidence in the above styled and numbered cause, is of the opinion that the crux of this matter is whether or not a recorded plat prevails over artificial monuments in the layout of the real property described in that plat.
.....
The Court is of the opinion that the normal rule is that courses and distances are controlled by and must yield to monuments, whether natural or artificial. While there is no case in this state dealing with a variation between the courses and distances contained on a recorded plat and the actual location of artificial monuments designated on the plat, the Court is of the opinion that the normal rule would apply.

*757 "Thus, where the lines have in fact been located and designated by monuments and there is a discrepancy between the calls for these monuments and courses and distances shown by a plan referred to in the conveyance, the normal rule as to the controlling effect of calls for monuments will be followed."

12 Am.Jur.2d, [Boundaries], § 76, p. 613.
Therefore, the Court is of the opinion that the one-half inch iron rods are artificial monuments and do control over the calls and distances contained in the plat referred to in the property description.
With that finding, the chancellor dismissed the complaint with prejudice.
The Duanes' assignments of error taken in a more logical order are:
1. Did the trial court err in failing to hold that where parties take property by reference to a recorded plat, the recorded plat determines the dimensions of their lot?
2. Did the trial court err in finding that there was a conflict between course and monuments when in fact there was a conflict between monuments?
3. Did the trial court err in finding that the erroneously placed artificial monuments took precedence over the official plat of record?
It is well settled that this Court will reverse a chancellor only when he is manifestly wrong. Ivy v. Department of Public Welfare, 449 So.2d 779, 783 (Miss. 1984); Richardson v. Riley, 355 So.2d 667 (Miss. 1978). The chancellor's finding of fact is equivalent to a jury verdict upon conflicting evidence and will not be reversed unless it is manifestly wrong. Voss v. Stewart, 420 So.2d 761, 765 (Miss. 1982).
The uncontested facts show as follows: The official plat under which the parties took title calls for 90° angle lot lines from Elm Street. All of the surveyors found iron rods upon Lots 4 and 5, which would displace by 6 feet the rest of the iron stakes down through Lot 12, including the Saltaformaggio and Duane lots. Surveyor Marks found at least two rear monuments on Lot 1 and between Lots 3 and 4, which would create a 90° angle from Elm Lane. Significantly, this marker on Lot 1 is in the same location given by the official plat for a primary subdivision corner. The angle created by the three primary subdivision corners located in the ground on Block 12 is 90° .
The chancellor apparently concluded that the iron rods 100 feet back that fixed the side lot lines in the official plat, which are actually placed on the lot, are better indicia of the dimensions of the lot than the remaining information given in the official plat and verified by surveys. In this case, the chancellor had undisputed testimony that not only did the official plat contemplate 90° angle lot lines from Elm Street, but that at least two of the rear monuments found by all of the surveyors would create 90° angle lot lines.
We proceed from the premise that a court should give controlling consideration to the intent of the parties in applying rules for the construction of deeds. In Welborn v. Henry, 252 So.2d 779, 780 (Miss. 1971), this Court said:
In construing a deed, it is necessary that it be considered as a whole and that the intent of the parties be gathered from its language. The intent is to be gathered from a fair consideration of the entire instrument along with the words employed therein.
The parties' deeds incorporate the official plat to particularly describe the lot conveyed. Therefore, all the descriptive information in the plat should be considered and harmonized as far as possible to achieve the intent of the grantor.
We have no quarrel with appellees' cases which state our general rule of law that in case of conflict in description courses and distances are controlled by, and must yield to, monuments whether natural or artificial. In Holcomb v. McClure, 211 Miss. 849, 853, 52 So.2d 922, 924 (1951), the Court held:
When monuments and distances are both given the monuments control and *758 the distances must be lengthened or shortened if necessary to prevent inconsistency.
In Ball v. The City of Louisville, 218 Miss. 867, 875, 56 So.2d 4, 5 (1952), the Court held:
In cases of conflicting descriptions, courses and distances are controlled by and must yield to monuments, whether natural or artificial.
Holcomb involved a conflict between the distance and the monument used as the starting point for the description. The Court shortened the distance and followed the monument. In Ball the description of proposed extension to municipal boundaries contained a call for a westerly course along a street which turned toward the north at the very end. The court held that the direction of the street controlled over the course called for in the description.
Neither Holcomb nor Ball involved boundary disputes over property described in an official recorded plat. Also, both cases involved conflict between a monument and a call for courses or distances, not a conflict between monuments, such as this one. Therefore, they would not be controlling precedent under these facts.
The question then becomes whether it was manifest error for the chancellor to conclude that the monuments fixed in the ground established the boundaries according to the true intention of the parties, despite the fact that they created an angle inconsistent with the intent of the official plat because they were six feet out of place.
In O'Herrin v. Brooks, 67 Miss. 266, 6 So. 844 (1889), this Court said that when a lot is in a platted subdivision the plat will control over an erroneous monument. The Court stated at 67 Miss. 274, 6 So. 845:
Moreover, while it is true that a call for natural or artificial monuments will prevail over courses and distances in discrepancies in deeds, yet it must not be forgotten that where it is a mistaken call for monument the rule does not apply.
In O'Herrin the deed described the property both by lot number and by reference to a monument. We ruled that the call for the lot itself must prevail over any description, by courses, distances and over any calls for monuments because the lot itself is the prominent object. However, O'Herrin did not involve a variation between an erroneously placed marker and courses and distances given in the plat.
From those general principles 12 Am.Jur.2d, Boundaries, § 67, p. 605, states:
Courses and distances and other inferior calls may control monuments and natural objects in cases of clear mistake, where the calls for monuments are inconsistent with each other... . The doctrine that monuments prevail over courses and distances is never adhered to where it would lead to an absurdity or where it would defeat a grant when, by rejecting a call for one or more monuments, the deed may be upheld and the manifest intent of the parties made effectual.
From the facts in this case it appears that here is a rare instance where courses and distances should prevail over monuments because the monuments are incorrectly located and conflict with other primary subdivision markers. For that reason, we find that the trial court erred as a matter of law in holding that the erroneously placed monuments took precedence over the official plat of record and that the determination that there was a conflict between courses and monuments was in error because the conflict presented by the testimony in this case is one between monuments.
For these reasons, the judgment of the trial court is reversed and a mandatory injunction enjoining the maintenance of the Saltaformaggio structure as it exists in violation of the deed description and restrictive covenants of said subdivision is rendered here.
REVERSED AND RENDERED.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
PATTERSON, C.J., not participating.

*759 APPENDIX 1

*760 
*761 
NOTES
[1] See Appendix 1.
[2] See Appendix 2.
[3] See Appendix 3.