DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-appellant Rosemary A. Hamed, d.b.a. R.A. Hamed International Imports, appeals a judgment of the Summit County Court of Common Pleas involving a boundary dispute with plaintiffs-appellees Nick and Patricia Dimitroff. This Court affirms.
Hamed and the Dimitroffs each own one of two adjoining parcels of land in Bath Township, Summit County, Ohio, which are bounded by Ghent Road (formerly known as Akron-Ghent Road). The two parcels were originally a single parcel owned by Frank Adams. In 1941, the single parcel was divided into two separate parcels. One parcel ("the Dimitroff parcel") was sold to Inez Mueller. The other parcel ("the Hamed parcel") was sold to Katherine Hieber. The common boundary of the Dimitroff and Hamed parcels was made according to a survey performed by W.S. Mathews ("the Mathews survey"). The courses and directions description of the common boundary in the deeds began at the center line of Ghent Road and followed a series of turns that, according to the deeds, were marked by iron pins.
Inez Mueller sold the Dimitroff parcel to George and Marie Pearson in 1946. Katherine Hieber sold the Hamed parcel to Frank Billman in 1951. Each of these transfers described the boundary line between the two parcels in accordance with the description derived from the Mathews survey.
In 1961, the construction of Interstate 77 through the Ghent Road area began. The state of Ohio obtained significant portions of both the Hamed and Dimitroff parcels through eminent domain. Thereafter, both parcels were bounded by Interstate 77; a small portion of one of the properties became landlocked on the other side of the freeway.
In 1987, the Dimitroffs purchased their parcel from Marie Pearson. The deed used the same description of the common boundary with the Hamed parcel as all previous deeds.
Hamed purchased her parcel in 1988. Prior to the sale of the parcel to Hamed, Frank Billman retained the surveying firm of Rohrer and Associates to ascertain the boundary between the properties. The survey ("the Rohrer survey") located only one of the iron pins from the Mathews survey on either of the parcels concerned, in an area that the Dimitroffs regarded as part of their property. Another pin was located in the small portion of landlocked property on the other side of Interstate 77. However, the location of the two pins could not be reconciled with the other known point, the center line of Ghent Road; in fact, if the Mathews description were traced backwards through the two pins, the property line extended beyond the center line of Ghent Road, almost to the other side. The surveyors then used a method known as proration to arrive at what the property line should be, given the location of the two iron pins. The resultant description was different from the description used in any of the deeds for either parcel until that time, but none of the parties were aware of the discrepancy at that time.
In 1997, the Dimitroffs anticipated constructing additional buildings on their property to accommodate their furniture business. Soon thereafter, they learned of the difference in the courses and distances description of the boundary line between the two parcels, as found in Hamed's deed. Additional surveying was done, but the surveys did not eliminate the discrepancies between the Dimitroffs' deed and Hamed's deed. The Dimitroffs attempted to resolve the matter with Hamed, but their efforts produced no results.
On June 19, 1997, the Dimitroffs filed a complaint in the Summit County Court of Appeals, naming Hamed as defendant. The complaint alleged claims for fraud, ejectment, and quiet title. Hamed answered and counterclaimed for trespass, ejectment, adverse possession, and unjust enrichment.
The parties agreed to bifurcate Hamed's adverse possession claim[1] and the issue of boundary location from the remaining claims, with the remaining claims to be tried to a jury and the adverse possession claim tried to the bench. Accordingly, a bench trial occurred on June 11, 1998. Witnesses included the parties, various surveyors, and Frank Billman, the preceding owner of the Hamed parcel.
The trial court issued its decision on July 27, 1998. The trial court found that the proper boundary was the line fixed by the Mathews survey and described in the Dimitroffs' deed, using the center line of Ghent Road as a reference point, which placed the iron pin several feet within the Dimitroff parcel. The trial court also found that Hamed had obtained a small triangular portion of the Dimitroff parcel by adverse possession. The trial court's decision was later amended nunc pro tunc to include language that there was no just reason for delay under Civ.R. 54(B).
Hamed timely appeals, asserting three assignments of error.
 Assignment of Error No. I THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN FINDING THAT THE SURVEY PINS MARKING THE BOUNDARY LINE AT ISSUE WERE NOT FROM THE ORIGINAL SURVEY OF MATHEWS DIVIDING THESE PROPERTIES, WHEN, IN FACT, THE ONLY EVIDENCE AT TRIAL WAS THAT THESE PINS WERE FROM THE ORIGINAL MATHEWS SURVEY.
 Assignment of Error No. II THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN FAILING TO FIND THAT THERE WERE TWO MATHEW'S [sic] SURVEY PINS WHEN IN FACT ALL THE EVIDENCE INTRODUCED AT TRIAL WAS OF TWO SUCH SURVEY PINS MARKING THE BOUNDARY LINE BETWEEN THE TWO ADJOINING PROPERTIES.
 Assignment of Error No. III THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO GIVE PRIORITY TO MONUMENTS IN THE FIELD FROM THE ORIGINAL SURVEY DIVIDING THE TWO ADJOINING PARCELS OVER THE WRITTEN METES AND BOUNDS DESCRIPTION CONTAINED IN THE DEED OF ONE OF THE ADJOINING LANDOWNERS.
Because the assignments of error are interrelated, they will be addressed together. Hamed contends that the trial court's decision declaring the boundary line between the Dimitroff and Hamed parcels to be the description of the Mathews survey found in the Dimitroffs' deed is against the manifest weight of the evidence. Hamed argues that the trial court failed to give priority to the two pins as monuments. This Court disagrees.
This Court has held that a judgment is against the manifest weight of the evidence only if the trier of fact clearly lost its way, creating a manifest miscarriage of justice that requires a reversal and a new trial. In re James (Oct. 14, 1998), Summit App. No. 18936, unreported. If the evidence before the trial court is subject to more than one interpretation, the reviewing court is bound to give it the interpretation that is most favorable to sustaining the trial court's judgment. Cent. Motors Corp. v.Pepper Pike (1995), 73 Ohio St.3d 581, 584. This is because "evaluating evidence and assessing credibility are primarily for the trier of fact." Yuhasz v. Mrdenovich (1992), 82 Ohio App.3d 490,492.
The rules for determining boundaries are stated in Broadswordv. Kauer (1954), 161 Ohio St. 524, 533-34:
 It is well settled that monuments are of prime importance in settling boundary disputes. The general rule is well stated in 6 Thompson on Real Property (Perm. Ed.), 519, Section 3327, as follows:
 "A `monument' is a tangible landmark, and monuments, as a general rule, prevail over courses and distances for the purpose of determining the location of a boundary, even though this means either the shortening or lengthening of distance, unless the result would be absurd and one clearly not intended, or all of the facts and circumstances show that the call for course and distance is more reliable than the call for monuments. This rule does not apply when it is evident that the call for a natural object or established boundary line was made under a mistaken belief with reference to the survey. Generally, in determining boundaries, natural and permanent monuments are the most satisfactory evidence and control all other means of description, in the absence of which the following calls are resorted to, and generally in the order stated: First, natural boundaries; second, artificial marks; third, adjacent boundaries; fourth, course and distance, course controlling distance, or distance course, according to circumstances. Area is the weakest of all means of description. * * *"
The general rule regarding the priority of monuments "does not apply where there are conflicting monuments." Maestas v. Martinez
(N.M.App. 1988), 752 P.2d 1107, 1110, citing Duane v.Saltaformaggio (Miss. 1984), 455 So.2d 753, 758. "[A] public street or road * * * may be used as a monument. It is, however, definitely stated * * * that streets [or] roads * * *, which are themselves required to be located, can not be given controlling effect in fixing the boundaries of other lands." Broadsword,161 Ohio St. at 535.
The Mathews survey originally referred to numerous iron pins and the center line of Ghent Road as monuments. There was no evidence that the center line of Ghent Road was any different at the time of the bench trial from when the Mathews survey was performed. However, only two pins from the Mathews survey can be found, and only one of these is still located on the same side of Interstate 77 as the two parcels. Running the description of the Mathews survey from the center line of Ghent Road places the pin within the Dimitroff parcel instead of at the boundary, while running the same description backwards from the iron pin, as done in the Rohrer survey, extends the parties' property line significantly beyond the center line of Ghent Road. Therefore, the trial court was presented with conflicting monuments: the center line of Ghent Road and the iron pins.
This Court concludes that the trial court did not err in its application of the law and that the judgment is not against the manifest weight of the evidence. Because the monuments at issue conflicted, the rule of monument priority was no longer in play. It was reasonable to believe that the center line of Ghent Road was more likely than the iron pins to be in the same location today as when the Mathews survey was performed. The Mathews survey description had been in every deed transferring the two parcels since their division, except for Hamed's deed, which was based on the Rohrer survey. As such, the trial court did not clearly lose its way by finding that the proper boundary between the parcels was the description derived from the Mathews survey.
Hamed contends that Ghent Road cannot be a monument, citing to language in Broadsword. Hamed argues that, because the point at which the boundary line begins in Ghent Road is not marked by a pin or other monument, Ghent Road is a "road * * * which [is itself] required to be located, [and therefore] can not be given controlling effect in fixing the boundaries of other lands."Broadsword, 161 Ohio St. at 535. This argument is misplaced. InBroadsword, the issue was whether the width of two state highways had been expanded since their creation and, consequentially, whether the center line of those highways had changed. In relation to the question of whether a road is itself required to be located, the Ohio Supreme Court said:
 The defendant attaches much significance to the above descriptions [of the boundaries in question] which define boundaries as running to a highway or along a highway or by a highway but no part of the argument with respect to those terms throws any light upon the essential question, "where was the boundary of the highway?"
Id. at 532. In the case at bar, there was no evidence that the center line of Ghent Road was any different at the time of trial than when the Mathews survey was performed. As such, there was no need to locate the center line of the road separately. It was not error to find that Ghent Road is a proper monument.
Hamed's three assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
DONNA J. CARR, FOR THE COURT.
SLABY, P.J., WHITMORE, J., CONCUR.
[1] The trial court's order purported to resolve an adverse possession claim made by the Dimitroffs. However, no such claim appears in their complaint, and the complaint was never amended.