# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00266-COA

**SUSIE PHAM**                                                          **APPELLANT**

**v.**

**WILLIAM C. MINER, AN LUONG MINER AND**                    **APPELLEES**
**EASTWOOD TOWNHOUSES, LLC**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/02/2023 |
| TRIAL JUDGE: | HON. MICHAEL H. WARD |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | MICHAEL JOSEPH YENTZEN |
| ATTORNEYS FOR APPELLEES: | ROBERT ALAN BYRD |
| | NATHAN LAMAR PRESCOTT |
| | JOEL CHARLES REYNOLDS JR. |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART - 12/03/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McCARTY AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     Susie Pham purchased two adjoining parcels of land on Teagarden Road in Gulfport,

Mississippi, in 1989 and 1993. Subsequently, in 1995, Pham's mother and stepfather, An

Luong Miner and William C. Miner, also purchased two adjoining parcels of land on

Teagarden Road.[1] A dispute arose concerning the ownership of a triangular strip of land on

---

[1] On March 10, 2005, the Miners filed their complaint to quiet title to what they alleged to be their property. On May 25, 2005, the Miners conveyed their property to Teagarden Development LLC (Teagarden Development). Teagarden Development lost the property through foreclosure, and Eastwood Townhouses LLC (Eastwood) subsequently

Pham's southern boundary and the Miners' northern boundary. In their pleadings, both sides claimed ownership of the disputed land by deed or, in the alternative, by adverse possession. The chancery court found that the parcel of land in dispute fell within the description contained in the Miners' deed and that Pham had no ownership interest in the parcel of land at issue. Aggrieved by the judgment, Pham appeals.

## FACTS AND PROCEDURAL HISTORY

¶2.　　Pham purchased 167 Teagarden[2] Road in Gulfport, Mississippi, by a warranty deed in September 1989. This property included an existing house, which Pham used as both her residence and beauty salon.[3] Due to issues with parking at this location, Pham became interested in purchasing the adjoining property to the south, 165 Teagarden Road, when she discovered that it was going to be sold at auction. Pham bought 165 Teagarden Road from Hancock Bank by a special warranty deed on June 18, 1993, which was recorded on July 6, 1993, in Deed Book 1246, Page 112, in the office of the Chancery Clerk of Harrison County, Mississippi, First Judicial District.[4]

---

acquired the Miners' property. With both Miners then deceased, Eastwood was added as a party plaintiff.

[2] The spelling of Teagarden is also spelled Tegarden. Both versions are considered correct and used interchangeably in the record.

[3] The ownership of this tract of land is not in dispute.

[4] The southern boundary of this tract of land is at issue in this case.

¶3.    In An's deposition,[5] she stated that she was working in Pham's salon when Pham told her about a piece of property for sale at 151 Teagarden Road. The Miners met with the owner of the property, James Lampley, who told them that the property had been a wedding gift from his mother fifty years prior. An purchased 151 Teagarden Road by a warranty deed, which was recorded in Deed Book 1309, Page 18, on July 6, 1995, from James R. Lampley.[6] Lampley told the Miners that his daughter had 157 Teagarden for sale as well.  157 Teagarden Road was located between An's property (151 Teagarden) and Pham's property (165 Teagarden). The Miners decided to purchase 157 Teagarden Road. However, prior to purchasing the property, An questioned Lampley about its property boundaries. According to An's deposition, Lampley told her that there was no fence between 151 and 157 Teagarden Road because both properties were owned by the Lampley family. Lampley pointed out "the little rod" in the front and back of the property to show the boundary, but there was no fence or any other marker dividing the properties. An also asked Lampley about 157 Teagarden's northern boundary. According to An, Lampley said the existing fence divided 157 Teagarden from "Mr. Ross' property."[7] An stated that Pham had also previously walked the property

_____

[5] The Miners' depositions were admitted into evidence at trial.  Both Miners were deceased at the time of the trial.

[6] The ownership of this parcel of land is not in dispute here.

[7] George Ross was the former owner of 165 Teagarden Road (now owned by Pham).

3

with her and pointed out a hedge row surrounding the fence as the property line.[8] With this information, the Miners did not request a survey. The Miners did, however, receive a "Title Opinion," allegedly "with a good and merchantable title." On August 24, 1995, The Miners purchased 157 Teagarden Road from Joan Lampley Barry and Barbara Lampley King by a warranty deed recorded on August 29, 1995, in Deed Book 1312, Pages 658-659, in the land deed records in the First Judicial District of Harrison County, Mississippi.

¶4.     The Miners contacted Robert Osborne, a land surveyor with Knesal Engineering in November 1998 to survey both of their properties at 151 and 157 Teagarden Road. An stated in her deposition that the purpose of the survey was to combine the two properties since she owned one parcel by herself, and the other parcel was owned by both her and William. Using a new metes-and-bounds description generated by this survey, the Miners executed a quitclaim deed to combine 151 Teagarden and 157 Teagarden into one property. Further, this deed designated the Miners as joint tenants with rights of survivorship and not as tenants in common. This deed was recorded on July 2, 2004, as instrument number 2004, 5473-D-J1.

¶5.     Soon after, Pham requested a metes-and-bounds survey of her two properties, 165 and 167 Teagarden Road, by Richard Perrett in September 2004. Perrett's survey indicated an overlapping parcel between 165 and 157 Teagarden Road with the following notes: "There

---

[8] At trial, Pham denied walking the property line with her mother or having any knowledge that her mother and stepfather purchased any of the Teagarden properties. Pham's counsel refers to161Teagarden Road multiple times; however, this Court proceeds with the impression that her counsel was referencing 157 Teagarden Road since 161 Teagarden Road does not exist.

appears to be inconsistencies in need of a common resolution referring to the deeds between parcels owned by Pham and Miner." The conflict concerning the triangular strip of land first arose after the Miners used the new metes-and-bounds description from their survey to combine their two parcels they deeded to themselves on July 2, 2004, in instrument number 2004, 5473-D-J1.

¶6. On March 10, 2005, the Miners filed a complaint to quiet title against Pham. The Miners attached to their complaint affidavits from previous landowners acknowledging the existing hedge row and fence as the property line shown on Osborne's survey. In addition, the Miners argued that if they were unsuccessful in their claim that their deeds, historical boundaries, and evidence of monuments proved that they were the true owners of the disputed overlapping triangle-shaped piece of property, then they would show they had acquired the property by adverse possession.

¶7. On April 20, 2005, Pham filed her answer and a counterclaim. In Pham's counterclaim, she alleged that she owned the parcel in question as a result of her deed. In the alternative, she contended that she acquired title to the property by adverse possession.

¶8. On May 25, 2005, the Miners conveyed their property via warranty deed to Teagarden Development. On January 4, 2006, Pham filed a motion to dismiss the Miners' complaint to quiet title, stating that the Miners no longer had any interest in the property. In response, the Miners requested that Pham's motion be denied due to the fact that the sale of their property was subject to the ongoing litigation. Additionally, the Miners filed a joinder to add

Teagarden Development as a plaintiff on March 13, 2006. The motion to dismiss was ultimately denied on March 21, 2006. On March 19, 2013, Pham filed a motion for summary judgment.

¶9. First Bank Assets LLC foreclosed on Teagarden Development's property on March 20, 2013, and Eastwood acquired the property formerly owned by the Miners and Teagarden Development on March 22, 2013, by a special warranty deed. Eastwood filed a response in opposition to Pham's motion for summary judgment on May 20, 2013. Prior to purchasing the property, Eastwood had Cassady & Associates, Inc. conduct a survey. Eastwood filed a motion to substitute parties on December 3, 2014, as the Miners were then both deceased, and Eastwood alleged it was the rightful owner of the property. A hearing was held on April 29, 2015, on Eastwood's motion to substitute parties and on Pham's motion for summary judgment. On May 11, 2015, the court entered an order that held that Eastwood should be added as a party plaintiff. The order further held that Pham's motion for summary judgment should be denied.

¶10. After several continuances, a two-day trial began on April 10, 2017. Eastwood called four witnesses during its case-in-chief: Pham, two experts in the field of surveying, and the owner of Eastwood. Pham testified and also called her son, an expert in the field of land surveying, and an expert in real estate law. In rebuttal, Eastwood recalled one of its experts. There were thirty-nine exhibits admitted, totaling 543 pages, which included numerous deeds, surveys, and the depositions of An and Pham.

6

¶11. Six years after the trial, a final opinion and judgment was entered on March 2, 2023. The chancellor first found that Pham's legal description in her deed from Hancock Bank did not "close."[9] As a result, citing *Herod v. Robinson*, 149 Miss. 354, 115 So. 40 (1927), the chancellor tried to cure the defect by considering parol evidence. The chancellor found that

> as originally platted, Mississippi City, along Tegarden Road south of the CSX Railroad, established lots with boundary lines running perpendicular to the said Tegarden Road. Additionally, the East-West lines forming the South as well as North borders of Susie's property should be parallel lines. Based upon this fact together with the facts established through parol evidence as set forth under TESTIMONY hereinabove, the Court finds by a clear preponderance of the evidence that Defendant, Susie Pham, has no ownership interest in the triangular shaped property lying on the north side of the Miners' property and south of her own as described above.

The chancellor also ordered that the title to Eastwood's property be quieted and all clouds removed. All other relief requested by Eastwood in its complaint was denied. Finally, the chancellor held that any and all relief sought in Pham's counterclaim was denied. Pham filed her notice of appeal.

**STANDARD OF REVIEW**

¶12. In *Ryan v. Ray*, 270 So. 3d 230, 234 (¶9) (Miss. Ct. App. 2018), this Court stated:

> "Our standard of review of a determination of ambiguity, or the lack thereof, of a [deed], and its subsequent interpretation is two-tiered." *Crisler v. Crisler*, 963 So. 2d 1248, 1251 (¶5) (Miss. Ct. App. 2007) (citing *Tupelo Redevelopment Agency v. Abernathy*, 913 So. 2d 278, 283 (¶12) (Miss. 2005)). "Whether a [deed] is ambiguous is a question of law which we review de novo." *Id*. "If an ambiguity is found to exist, its interpretation is a matter for the trier of fact[,] which we review under a substantial evidence/manifest error

---

[9] We discuss this finding in more detail in our analysis. *See infra* ¶¶19-21.

standard." *Id*.

## ANALYSIS

¶13. The question presented on appeal is who is the record owner of the triangular strip of land. The chancellor found that the land in dispute fell within the description contained in the Miners' deed. The chancellor did not make any specific finding as to either party's adverse possession claim. This Court will discuss the claim of ownership of the disputed property by both deed and adverse possession.

### I. Ownership by Deed

¶14. The original description of the Miners' property is set forth in the deed from Barry and King to the Miners, found in Deed Book 1312, Pages 658-659, as follows:

> That certain lot or parcel of land situated in the City of Gulfport in The First Judicial District of Harrison County, Mississippi, described as follows, to-wit: That certain lot or parcel of land having a front on Teagarden Road of 100 feet, and running back in a Westerly direction between parallel lines a distance of 300 feet. Said property is bounded on the South by the property now or formerly of J.R. Lampley, on the North by property now or formerly of George Ross, on the East by Teagarden Road, and on the West by the Mississippi City school property.

We first note that there is no point of beginning described in the above conveyance. The deed states that the eastern boundary is 100 feet of frontage on Teagarden Road but does not indicate where that 100 feet begins. The deed does not give a metes-and-bounds description of the other boundaries of the land being conveyed. Instead, it states that the parcel of land conveyed is bounded on the "South by the property now or formerly of J.R. Lampley, on the North by property now or formerly of George Ross, on the East by Teagarden Road, and on

8

the West by the Mississippi City school property." This legal description raises the question:

how do we locate the Miners' property?

¶15.     In *Biloxi Development Commission v. Frey*, 401 So. 2d 716, 720-21 (Miss. 1981), the

supreme court stated:

> Concerning construction to be given deeds, this Court stated in *Dunn v. Stratton*, 160 Miss. 1, 7, 133 So. 140, 142 (1931), the following:
>
> > It is the duty of courts in construing deeds to effectuate the intention of the parties, but, since deeds must be in writing, the intention must be found in the writing either by way of complete delineation of the description on the face of the deed or by dependable references therein made which, when applied, render the delineation complete. The sundry rules that have been formulated by the courts for the interpretation of descriptions are but aids in arriving at the probable true intention of the written instrument. These rules, so far as applicable to this case, may be summarized thus: In construing a deed, (1) effect must be given, if possible, to each item of the written contents and no item included in the deed as a part of the description is to be rejected as erroneous, or shall be varied, so long as it is reasonably possible to make all of them harmonize; and (2) **those parts which are the more certain and dependable as descriptive items will interpret those items which are the less certain and dependable, and, when it is necessary in order to satisfy and harmonize all items, the more certain will, if reasonably possible, draw to themselves those that are the less certain;** and (3) if any item is to be rejected as impossible, or varied as erroneous, the item which is the less certain and about which it is the more probable the grantor was mistaken will be thus rejected or varied.
>
> **Therefore we are of the opinion the language "bounded on the north by Jackson Street, on the East by property now or formerly of Patton; and on the West by Couevas Street" is more certain and dependable as descriptive items and will interpret the less certain descriptive term "having a frontage on Couevas Street of 47'8 ."** *See also Moore v. Kuljis*,

9

207 So. 2d 604 (Miss. 1967); *Texas Company v. Newton Naval Stores Co.*, 223 Miss. 468, 78 So. 2d 751 (1955).

In addition, the property is also described as "Being Parcel 33-6" and reference is made to property Map SD-3. **Not only does the call for natural and artificial monuments prevail over courses and distances when interpreting a deed,** but "the call for the lot itself must prevail over any description by courses and distances, or other descriptive particulars." *O'Herrin v. Brooks*, [67 Miss. 266, 274, 6 So. 844, 845 (1889)].

(Emphasis added). The record shows that the southern boundary, the land now or formerly owned by J.R. Lampley, is that tract of land conveyed to An Miner in the deed found in Deed Book 1309, Page 18. This southern boundary is not in dispute. The western boundary, the Mississippi City school property, is also not in dispute. However, the northern boundary is in dispute and is described as the "property now or formerly of George Ross."

¶16. The record shows that the description of the property owned by George Ross is identical to the property conveyed to Pham by the Hancock Bank by special warranty deed found in Deed Book 1246, Page 112, and is described as follows:

That certain lot or parcel of land located in Section 1, Township 8 South, Range 11 West, and being more particularly described as beginning at a point on the west side of Teagarden Road, at point 608 feet, 3 inches South of the center of the right-of-way, running thence south along the West boundary of said Teagarden Road a distance of 75 feet, thence running south 79 degrees West to a wire fence, said wire fence is on the division line of this lot herein conveyed and Mixon Estate, thence running north along said wire fence to a point 519 feet south from the center of the right-of-way of said railroad, thence north 78.5 degrees east to a point of beginning; bounded on the north and south by lands now or formerly owned by William Malley, on the east by Teagarden Road, on the west by the land now or formerly owned or belonging to the Estate of Mixon, situated in the town of Mississippi City, and this also being the land bought from Minnie C. Finn by Betty Boone on November 7, 1910, and recorded in Deed Book 95, on pages 195-196, of the records in the

10

Chancery Clerk's Office of Harrison County, Mississippi.

The description of Pham's tract of land has been consistent throughout the chain of title:

| Date | Grantor | Grantee |
|------|---------|---------|
| 10/01/1891 | W. L. Malley | Mrs. Margaret Malley |
| 05/31/1893 | Mrs. Margaret Malley | John J. Finn |
| 11/07/1910 | George P. Hewes | Mamie C. Finn |
| 11/07/1910 | Mrs.T. L. Williams | Mamie C. Finn |
| 11/07/1910 | Mamie C. Finn | Mrs. Betty Boone |
| 06/23/1923 | J. F. Boone | T.A. Wood |
| 04/01/1933 | T.A. Wood | Andrew Gray |
| 02/02/1940 | Mrs. Elizabeth Thrasher, et al. | Andrew Gray |
| 02/26/1942 | Andrew Gray, Sr. | Fred Thrasher |
| 02/28/1944 | Fred Thrasher | Mrs. Helen Gray Ross |
| 10/21/1980 | George R. Ross, et al. | William D. Atchison |
| 07/13/1984 | William D. Atchison | Kathy A. Manifold |
| 03/19/1986 | Kathy A. Manifold | David J. Manifold |
| 09/22/1992 | City of Gulfport (tax sale) | Hancock Bank |
| 06/01/1993 | Donnie D. Riley (Sub. Trustee) | Hancock Bank |
| 06/19/1993 | Hancock Bank | Susie N. Pham |

¶17. The Miners' tract of land appears to have been once owned by W. L. Malley as well. The first deed in the record in the chain of title to the Miners' property shows that on April 10, 1919, "Mrs. Annie Malley Morris, widow of and only heir at law of W. L. Malley,

11

deceased," conveyed to T.L. Craig a parcel of land in Mississippi City,[10] Harrison County described as:

> Bounded on the North by property of Boone; West by Miss. City School property; South by property of Gee and Thomas; East by Tegarden Road, in Section I of Township 6 Range II W. and having a frontage on Teagarden Road of two hundred and seventy-five feet, more or less, and a depth of three hundred and ten feet, more or less . . . .

This 1919 deed references the parcel being bounded on the north by the property of Boone. Pham's chain of title outlined above shows that the Boones obtained the property on the northern boundary in 1910. Again, this is the same property Pham ultimately purchased. In fact, the deed to Pham specifically states that "this also being the land bought from Minnie C. Finn by Betty Boone on November 7, 1910, and recorded in Deed Book 95, on pages 195-196, of the records in the Chancery Clerk's Office of Harrison County, Mississippi."

¶18. Thus, the northern boundary of the Miners' property, now owned by Eastwood, is undoubtedly the same as Pham's southern boundary. This boundary line has been the same for over 100 years. Therefore, the decision in this case rests upon the interpretation or construction of Pham's deed.

¶19. The chancellor found that the description in Pham's deed did not "close." As a result, he considered parol evidence concerning the dimensions of Pham's property. The issue, however, concerned the *northern* boundary of Pham's property, not the southern boundary. There is no question that the point of beginning in Pham's legal description is clearly

---

[10] There are plats of Mississippi City filed in the record from as early as 1838.

identified and marked as being 608 feet and 3 inches from the center of the right of way of the railroad. The description then directs that we run thence south along the western boundary of Teagarden Road for 75 feet. Again, this is a clearly identifiable and marked position. The deed then says to run south 79 degrees west to a wire fence, a point that was clearly marked. The next call required that we run north along the wire fence to a point 519 feet south of the center line of the railroad, a point clearly marked and identified.

¶20.    The final call is the one that led the chancellor to find that Pham's legal description does not close and his decision to allow parol evidence. We find that the chancellor erred in this regard. The final call states that "thence north 78 ½ degrees east to a point of beginning." The problem was if a person leaves the northwest corner of the property, identified as being 519 feet south of the center line of the railroad, and travels at an angle of "north 78 ½ degrees east," that does not take the person to the point of beginning. Everyone agreed that was a fact.

¶21.    In *Knight v. Minter*, 749 So. 2d 128, 133 (¶8) (Miss. 1999), the court stated:

> In cases requiring judicial construction of a deed conveying a mineral interest, the Court seeks to ascertain and effectuate the intent of the parties. The case of *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 352-353 (Miss. 1990), sets out the following three-tiered process which the Court is to utilize in making such a determination: (1) look solely to the language contained within the "four corners" of the instrument; (2) if the language within the instrument's "four corners" is ambiguous, then apply the applicable canons of construction in a discretionary manner; and (3) if the intent of the parties is still unknown, look to extrinsic evidence. "Where [the language within the four corners of the instrument] is clear, explicit, harmonious and free from ambiguity, the Court will look solely to the language used in the instrument itself." *Miller v. Lowery*, 468 So. 2d [865,] 867 [(Miss. 1985)].

Because the course of the northern boundary did not lead back to the point of beginning, we must consider the applicable canons of construction.

¶22.	In *Ball v. City of Louisville*, 218 Miss. 867, 875, 56 So. 2d 4, 5 (1952), our supreme the court stated:

> In case of conflicting descriptions, courses and distances are controlled by, and must yield to, monuments, whether natural or artificial. 8 Am. Jur., Sections 53 and 62, pages 782 and 789; 11 C.J.S., Boundaries, § 50, page 605; *Potts v. Cannon Cotton Compress & Warehouse Co.*, 70 Miss. 462, 12 So. 147; Devlin on Real Estate, 3rd Edition, Vol. 2, Section 1029, page 1990; *Holcomb v. McClure*, 211 Miss. 849, 52 So. 2d 922, 923. It was held in *Colton v. Seavey*, 22 Cal. 496, that the monuments should control although they determined the course of the line to be northeasterly instead of westerly, which is exactly the situation we have here from the point where Main Street veers to the north.

In the present case, Pham's legal description closed by applying this rule of construction. The angle call of 78 ½ degrees should have been disregarded. The northern boundary line should have been drawn from the northwest corner of the description to the point of beginning, the northeast corner.

¶23.	Because the legal description of the property conveyed to Pham from the Hancock Bank does close, there was no need to consider parol evidence.  The same description had been used for over 100 years, and the southern boundary has never been a perpendicular line from Teagarden Road to the western boundary. There was no need to consider the original plat of Mississippi City, which is almost 200 years old, because there is no reference to the plat, or lots on the plat, in the legal description. The testimony showed that the disputed parcel of land fell within Pham's property description. The Miners' northern boundary is

14

clearly Pham's southern boundary. This has been true since 1919. The trial court erred by finding that the disputed parcel was within the legal description of the land now owned by Eastwood.

## II.    Ownership by Adverse Possession

¶24.    In their respective pleadings, both Pham and Eastwood claimed, in the alternative, that they were the rightful owners of the disputed triangle-shaped parcel by adverse possession. In the opinion and judgment, the chancellor held that "any and all other relief sought by [Eastwood] in [its] Complaint be and the same is hereby denied." Further, the chancellor held that "any and all relief sought by [Pham] in her counterclaim be and the same is hereby denied." The chancellor made no specific ruling on the issue of adverse possession as to either party. In *Frazier v. Frazier*, 31 So. 3d 1218, 1220 (¶6) (Miss. Ct. App. 2009), this Court held that to establish a claim of adverse possession, a party must show by clear and convincing evidence that their possession was

> (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful. *West v. Brewer*, 579 So. 2d 1261, 1262 (Miss. 1991) (quoting *Stallings v. Bailey*, 558 So. 2d 858, 860 (Miss. 1990)).

In the case at hand, the chancellor made no ruling on how or why Eastwood's claim for adverse possession failed. The trial court provided no analysis of the factors set forth above and the conflicting evidence presented at trial. Therefore, this Court may not consider the merits of the adverse possession claim. We reverse and remand this issue for the sole purpose that the chancellor may make a specific finding as to Eastwood's claim of adverse

15

possession.

## CONCLUSION

¶25.    After review of the record, we find that the chancery court erred in finding that Pham's 1993 deed conveying 165 Teagarden Road was "defective and subject to interpretation," therefore making it appropriate to consider parol evidence to reconcile the boundary dispute.  Since we find no defect in Pham's 1993 deed, the chancery court's opinion and judgment dated March 2, 2023, is reversed, and we hold that Pham is the rightful owner of the land described above in her 1993 deed for 165 Teagarden Road, including the triangular-shaped property directly abutting the north side of Eastwood's property. Further, we find that the chancellor failed to make a specific ruling on Eastwood's claim of adverse possession. Therefore, the chancellor's ruling is reversed and remanded in part for the chancellor to make a specific ruling Eastwood's claim of ownership of the disputed parcel on the basis of adverse possession.

¶26.    **REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND WEDDLE, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**

16